731 A.2d 447

ATTORNEY GRIEVANCE COMMISSION

v.

Elvira M. WHITE (Two Cases).

Nos. AG 81, Sept. Term, 1997, AG 42, Sept. Term, 1998.

Court of Appeals of Maryland.

June 10, 1999.

**348**

Melvin Hirshman, Bar Counsel and Glenn M. Grossman, Deputy Bar Counsel, for the Atty. Grievance Com'n of Maryland.

Edward Smith, Jr., Baltimore, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and THEODORE G. BLOOM (retired, specially assigned), JJ.

CATHELL, Judge.

Bar Counsel, on behalf of the Attorney Grievance Commission, petitioner, filed two petitions for disciplinary action against respondent, Elvira M. White. In the first petition, Number 81, Bar Counsel represented and charged that respondent had violated Rule 3.4 (Fairness to opposing party and counsel),[1] and Rule 8.4 (Misconduct),[2] of the Maryland Rules of Professional Conduct (Rule or Rules). In petition Number 42, Bar Counsel represented and charged that respondent had violated Rule 3.3 (Candor toward the tribunal),[3] and Rule 8.4. We referred the charges in both petitions to the Circuit Court for Baltimore City, requesting it to conduct a consolidated hearing and report its findings of facts and proposed conclusions of law to this Court.

---

1. **Rule 3.4. Fairness to opposing party and counsel.**

 A lawyer shall not:
 (a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act....

2. **Rule 8.4. Misconduct.**

 It is professional misconduct for a lawyer to:
 ....
 (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
 (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
 (d) engage in conduct that is prejudicial to the administration of justice....

3. **Rule 3.3. Candor toward the tribunal.**

 (a) A lawyer shall not knowingly:
 (1) make a false statement of material fact or law to a tribunal;
 ....
 (4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

With respect to petition Number 81, the circuit court found by clear and convincing evidence that respondent violated Rule 3.4(a) and Rule 8.4(c) and (d). Similarly, with regard to petition Number 42, the circuit court found that respondent violated Rule 3.3(a)(1) and (4) and Rule 8.4(b), (c), and (d). Respondent filed exceptions to the circuit court's findings and conclusions. Bar Counsel did not file any exceptions and recommended that respondent be disbarred. We shall overrule respondent's exceptions and order that she be disbarred.

## I. Petition Number 81

Respondent was admitted as a member of the Maryland Bar on May 27, 1980. She maintained a part-time civil practice from approximately 1981 until July 1990. Respondent also was employed as a full-time public defender in Prince George's County beginning approximately July 1, 1981.

In March 1995, respondent filed a civil suit in the United States District Court for the District of Maryland against the Public Defender for the State of Maryland alleging employment discrimination. The case was tried before a jury, the Honorable Peter J. Messitte presiding. The jury could not arrive at a verdict and the judge granted a mistrial. The Public Defender filed a renewed Motion for Sanctions, seeking a dismissal of the case with prejudice. Judge Messitte granted the motion and entered final judgment in favor of the defendant Public Defender. He found specifically:

1. the [r]espondent engaged in an action of destruction of parts of an autobiographical manuscript, a substantial portion of which covered events bearing on her claims before the court;

2. that she lied in her July, 1996 deposition when she stated that she had destroyed the entire manuscript;

3. that she knowingly and wilfully intended to destroy discoverable and relevant evidence, and that her statements to the contrary were not believable, and

4. that her testimony that she did not understand what it was that defense counsel was asking for was fatuous and not worthy of belief.

Respondent appealed the district court's decision, but failed to prosecute that appeal in a timely manner, and it was dismissed.

Judge Messitte referred the matter of respondent's actions during the litigation to the Disciplinary Committee of the United States District Court for possible sanctions. The Disciplinary Committee determined that a formal disciplinary proceeding should be instituted against respondent. A panel of three district court judges was appointed to hear the matter. When respondent appeared before the panel, she sought to present testimony challenging Judge Messitte's findings. The panel declined to allow this and prevented her from relitigating the factual issues that had been decided against her by the trial court, stating that the factual findings "are final and binding on her, and she is now collaterally estopped from challenging them by witnesses or otherwise." The panel noted that the proper process for her to seek a review of those factual findings would have been to follow through with the appeal. The panel found that respondent violated Rules 3.4(a) and 8.4(c) and (d) of the Maryland Rules of Professional Conduct. It then recommended to the judges of the full court that respondent be suspended indefinitely from the practice of law in the United States District Court. The full court accepted the recommendation, and respondent was suspended indefinitely from practice in that court on September 26, 1997.

Based upon the findings, conclusions, and sanctions imposed by the United States District Court, Bar Counsel filed in this Court a petition for disciplinary action, Number 81, for reciprocal discipline pursuant to Maryland Rule 16–710e.1.[4] The

---

4. Maryland Rule 16–710e.1. states in relevant part that "[a] final adjudication in a disciplinary proceeding by a judicial tribunal or a disciplinary agency appointed by or acting at the direction of a judicial tribunal that an attorney has been guilty of misconduct is conclusive

circuit court, in its Proposed Findings of Fact and Conclusions of Law, noted that respondent again attempted to present testimony to dispute the factual findings of the federal trial court. The circuit court, pursuant to Maryland Rule 16–710e.1, declined to permit her to do so. The circuit court then made the same findings as to respondent's conduct before the United States District Court as described, *supra*. The circuit court concluded:

> Based on the rule ... and the absence of any evidence showing cause why she should not be disciplined in the reciprocal matter, this court finds that there was a final adjudication by the United States District Court for the District of Maryland, and that such adjudication is conclusive proof of the misconduct of the [r]espondent.

Respondent excepts to the circuit court's findings and proposed conclusions of law, claiming for the third time that Judge Messitte erred in sanctioning her and that the panel should not have suspended her. She argues that "[t]he extraordinary circumstances of this case warranted that [r]espondent be heard in challenging the wisdom of the United States District Court in suspending her." Respondent further explains:

> Instant counsel for the [r]espondent both at the hearing before the United States District Court and herein attempted to attack this error ridden finding, but was rebuffed by both tribunals. Unlike *Attorney Grievance v. Richardson*, 350 Md. 354 [712 A.2d 525] (199[8]), [r]espondent was never afforded the opportunity to defend herself against the bully tactics employed in the decision by the federal court due to the incompetent act of her counsel and the fact that she had not been notified of her appeal's dismissal.

We said in *Attorney Grievance Commission v. Richardson*, 350 Md. 354, 365–68, 712 A.2d 525, 530–32 (199[8]):

> proof of the misconduct in the hearing of charges pursuant to this Rule."

This case is a reciprocal discipline case. In such cases, "[a] final adjudication in a disciplinary proceeding by a judicial tribunal ... that an attorney has been guilty of misconduct is conclusive proof of the misconduct in the hearing of charges pursuant to this Rule." Rule 16–710(e). *See Attorney Griev. Comm'n v. Gittens,* 346 Md. 316, 324, 697 A.2d 83, 87 (1997); *Attorney Griev. Comm'n v. Willcher,* 340 Md. 217, 221–22, 665 A.2d 1059, 1061 (1995); *Attorney Griev. Comm'n v. Saul,* 337 Md. 258, 267–68, 653 A.2d 430, 434 (1995); *Attorney Griev. Comm'n v. Hopp,* 330 Md. 177, 185–86, 623 A.2d 193, 197 (1993); *Attorney Griev. Comm'n v. Sparrow,* 314 Md. 421, 425–26, 550 A.2d 1150, 1152 (1988); *Attorney Griev. Comm'n v. Parsons,* 310 Md. 132, 142–43, 527 A.2d 325, 330 (1987); *Attorney Griev. Comm'n v. Haupt,* 306 Md. 612, 614–15, 510 A.2d 590, 591–92 (1986); *Attorney Griev. Comm'n v. Bettis,* 305 Md. 452, 455, 505 A.2d 492, 493 (1986); *Attorney Griev. Comm'n v. Moore,* 301 Md. 169, 171, 482 A.2d 497, 498 (1984); *Attorney Griev. Comm'n v. Rosen,* 301 Md. 37, 39, 481 A.2d 799, 800 (1984). Thus, evidence that the respondent was found, by the Supreme Court of Florida, to have engaged in misconduct and that that finding was used in the District of Columbia to adjudicate reciprocal discipline proceedings against him, is not only admissible in this Court, but such evidence conclusively establishes that he engaged in that misconduct. As we have seen, the respondent was suspended on two occasions pursuant to an order of the Supreme Court of Florida and the District of Columbia Court of Appeals did likewise. The orders of the Florida and District of Columbia courts were issued only after disciplinary proceedings had been initiated and a hearing had been held to adjudicate the charges referred. Thus, the orders suspending the respondent conclusively establish that the respondent engaged in misconduct, they being final adjudications by a judicial tribunal in a disciplinary proceeding. *Gittens,* 346 Md. at 325, 697 A.2d at 88; *Willcher,* 340 Md. at 221–222, 665 A.2d at 1061; *Attorney Griev. Comm'n v. Sparrow,* 314 Md. 421, 550 A.2d 1150 (1988). *See also Attorney Griev. Comm'n v.*

*Moore,* 301 Md. 169, 482 A.2d 497 (1984). So too is the fact of the suspensions imposed by the Florida Supreme Court and the District of Columbia Court of Appeals, they too being final adjudications in a disciplinary proceeding.

. . . .

. . . We have made clear that this provision does not permit the relitigation of the facts underlying the disciplinary judgment. *Sabghir,* 350 Md. at 80–81, 710 A.2d at 932–33. The respondent admits to wanting to impeach the Florida judgment. The hearing court correctly declined to permit him to do so; the respondent may not revisit, or collaterally attack, either the findings of fact made by the Florida court or the judgments it rendered. [Alteration in original.]

■ We see no further need to explain the principles we so recently stated in *Richardson.* Accordingly, we overrule respondent's exceptions as to petition Number 81 and sustain the circuit court's conclusion that respondent violated Rules 3.4(a), and 8.4(c) and (d).

## II. Petition Number 42

■ We first note that this Court has original and complete jurisdiction over attorney disciplinary proceedings. Md. Rule 16–709b; *see also Attorney Grievance Comm'n v. Adams,* 349 Md. 86, 93, 706 A.2d 1080, 1083 (1998); *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 470, 671 A.2d 463, 473 (1996); *Attorney Grievance Comm'n v. Kent,* 337 Md. 361, 371, 653 A.2d 909, 914 (1995); *Attorney Grievance Comm'n v. Powell,* 328 Md. 276, 287, 614 A.2d 102, 108 (1992). Under our independent review of the record, we must determine whether the findings of the hearing judge are based on clear and convincing evidence. The "hearing court's findings of fact are *prima facie* correct and will not be disturbed unless they are shown to be clearly erroneous." *Attorney Grievance Comm'n v. Garland,* 345 Md. 383, 392, 692 A.2d 465, 469 (1997) (citing *Attorney Grievance Comm'n v. Goldsborough,* 330 Md. 342, 347, 624 A.2d 503, 505 (1993)). Accordingly, the ultimate

decision as to whether a lawyer has violated the Rules rests with this Court. *Garland,* 345 Md. at 392, 692 A.2d at 469; *Attorney Grievance Comm'n v. Breschi,* 340 Md. 590, 599, 667 A.2d 659, 663 (1995).

Bar Counsel contends in petition Number 42 that respondent gave false or misleading testimony on two separate occasions. The first alleged occasion took place when respondent testified as a witness in post conviction proceedings relating to Amy Lynn Smith, whom respondent represented as an Assistant Public Defender. The second instance occurred during a deposition taken in connection with respondent's federal claim against the Public Defender in which respondent testified about her private representation, long after the Public Defender enacted a ban on private practice, of tenants involved in a fire in the District of Columbia.

The circuit court made specific findings of fact relating to the charges outlined by Bar Counsel, which we restate:

> In this petition, Bar Counsel alleged that while the [r]espondent was an Assistant Public Defender, she represented one Amy Lynn Smith in a case of some notoriety in Prince George's County. The Defendant Smith was convicted of a number of offenses, including conspiracy to commit murder and attempted murder in which the victims were her own parents. Subsequently the Defendant Smith filed a petition for post conviction relief in the Circuit Court for Prince George's County, and the [r]espondent was called to testify in those proceedings in June of 1994.

> While testifying under oath, the [r]espondent was questioned about the extent of her private practice while in the employ of the Public Defender's Office. The [r]espondent testified that as of July, 1990 the private practice of law was prohibited by the State Office of the Public Defender. She further testified that she represented only one client after the prohibition was instituted, and that representation was with the knowledge and permission of her supervisor....

> ... Bar Counsel [also] asserts that the [r]espondent represented plaintiffs for personal injuries in a case arising

out of a fire that occurred in the District of Columbia. This representation was long after the ban on private practice had gone into effect....

. . . .

The [r]espondent was called as a witness in the post conviction proceeding by the attorney for the Defendant Smith. During those proceedings, while the [r]espondent was under oath, she was asked:

Q. Did you, [Ms.] White, ever engage in any type of practice outside of your Public Defender's Office while being employed by the Public Defender's Office?

A. Yes. I did.

Q. Under what circumstances did you do that?

A. From the time of my full employment from 1980—whenever I was hired, July 1st, when I was hired full time, 1981, until approximately July of 1990. I had a part-time civil practice, and at that time Stephen Harris, the new Public Defender, disbanded the private practice of law. Allen Shepherd [, now the Honorable E. Allen Shepherd, Jr., of the Circuit Court for Prince George's County,] who was the District Public Defender here in Prince George's County, told us to finish up everything we had.

Q. Is that what you did?

A. Yes, with the exception of a case I handled for a Judge's daughter long after the prohibition was gone. I did engage in the private practice of law, I handled a case for Judge Audrey Melbourne of her daughter's divorce, which was heard by The Honorable G.R. Hovey Johnson, and that was against the policy of the Office of the Public Defender, and when she—at the time she and I were close, and she asked me to do her a favor, and as a judge I did her a favor....

. . . .

The [r]espondent testified with regard to the ban that she was told by Judge Shepherd that she could "finish up" any cases which she had started prior to the ban. She under-

stood this to mean that if the client had contacted her prior to the ban, she could carry through that client's case to conclusion, including filing suit on behalf of the client after the ban was in effect. Judge Shepherd was asked:

Q. Concerning cases which were pending in court, where the representation was being carried out by an Assistant Public Defender, what was the policy?

A. The policy was you could finish up, conclude those cases that were pending.

Q. What about cases which were, where there was no case pending in court or before an administrative agency, but you had a client?

A. No. My understanding was, you could conclude those cases for which you had accepted fees and were in the process. That means in court.

Judge Shepherd was then asked whether the [r]espondent's statement that he had told her she could finish the case of any client who had contacted her prior to the ban was correct. He answered:

I don't believe it is. You know, she may have misunderstood, but the point is, the directive was clear, that if you have a pending case, you conclude your pending case, but you can't accept new cases.

When [r]espondent testified, she was asked on cross examination about these other cases. In each case, [r]espondent had filed suit or entered her appearance on behalf of the clients after the ban had gone into effect. Bar Counsel attempted to show that there were new matters, while [r]espondent insisted throughout that she had been "contacted" by the client prior to the ban. Bar Counsel questioned [r]espondent about these specific cases:

1. Case of Donna Smith, which involved a complaint for child custody filed after the ban went into effect. Respondent had no documents relating to this file. She testified from memory that she had been consulted by [Ms.] Smith prior to the ban;

2. The Walter case was filed by the [r]espondent in 1992. Respondent believed that Mr. Walter had talked to her about his divorce case prior to July 1, 1990. The complaint filed in 1992 stated that the parties had separated on January 13th, 1989;

3. Branson v. Branson was an action filed by another attorney in which the [r]espondent entered her appearance in March of 1992. Again, [r]espondent said that she had been consulted by the original attorney prior to the date of the ban. Respondent had no documents as to when she had been initially approached in that case;

4. The case of Mark C. Saunders, Jr., was one for a limited divorce filed on August 19th, 1991. The complaint in this case averred that the parties had separated on June 15th of 1991. Respondent testified that she had discussed the case with Mr. Saunders well in advance of the filing date;

5. The case of James T. Butts (also a domestic case) was filed in May of 1991. Respondent testified that she had prepared a legal separation for Mr. Butts at least a year prior to the filing of the suit.

6. The case of David Draggs, another domestic case, was filed in April of 1991. Respondent testified that she and Mr. Draggs attended the same church, and that she had talked to him long before the ban with regard to his domestic matter.

At some point, the Public Defender, Mr. Harris, wrote to the [r]espondent asking her to explain her involvement in the above cases. Her response to Mr. Harris was that she had had a relationship with all of them prior to the effective date of the private practice ban. Mr. Harris then requested that the [r]espondent send him documents showing when she had, in fact, been contacted by these various clients. The [r]espondent refused to send this information to the Public Defender, although she said that such documents did exist. Her reason for the refusal was that the attorney who was winding up her cases and who had custody of the files had invoked the attorney client privilege. In her testimony

before the court, however, [r]espondent said that was only one of the reasons:

Q. What was another reason?

A. Well, there were actually three reasons. One was attorney/client; two, I was involved in litigation with the Office of the Public Defender, and had been advised by counsel at that time not to supply them with one. Three, I did look for the documents in my basement before I got kicked out of my house, and four, that was about the time of the break-in, in my house, that the police investigated, where somebody only stole files. So, they were the reasons.

The [r]espondent explained that she had no documents relating to these cases since they had been turned over to the lawyer representing her in Federal Court in the suit against the Public Defender's Office. This court suggested that because of the seriousness of the matter and its potential impact on the [r]espondent, that if the parties agreed, the case would be continued and this court would instruct the lawyer allegedly in possession of the files to be present at the second hearing. Both counsel adopted the court's suggestion. The hearing was continued until November 20th, 1998, at which time Erroll Brown, Esquire appeared. Mr. Brown had represented the [r]espondent (along with co-counsel, Maurice Foster). He had no documents which would show any contact between the [r]espondent and the clients who had been represented after the effective date of the ban. He testified that he had requested that information from the [r]espondent, but had not received any documents from her.

. . . .

In [Ms.] White's Federal Court suit against the Office of the Public Defender, she was deposed over a number of months. In December of 1995, during her deposition testimony, she was asked about claims arising out of a fire in the District of Columbia. That fire had occurred on February 22nd, 1992, and several of the tenants had sustained personal injuries as a result of the alleged negligence of the

landlord. [Ms.] White admits that she was contacted by someone on behalf of the injured parties, and that she went to the District of Columbia to consult with them. She had the injured parties sign a retainer agreement, and prepared a letter of representation to send to the landlord. · At the hearing before this court, [Ms.] Ruthie Jones, an employee of the Public Defender's Office, who was the [r]espondent's secretary at the time, testified that she typed letters at the direction of the [r]espondent. These letters to the clients enclosed powers of attorney naming [r]espondent as their counsel. Ms. Jones also typed a notice letter to the landlord advising him of [Ms.] White's representation. [Ms.] Jones testified that the [r]espondent dictated a letter to a Clayton J. Powell, Jr., Esquire, setting forth the terms of the referral of the case that she was making to Mr. Powell. [Ms.] Jones testified that she warned [Ms.] White about being involved in a case with Mr. Powell, whose wife was a Public Defender Board Member.

The [r]espondent's explanation was that she was not acting as a lawyer in the case, but as a law clerk. [Footnotes omitted.] [Citations omitted.]

With regard to respondent's testimony in the post conviction proceeding, the circuit court found that Bar Counsel clearly showed that "[r]espondent engaged in the private practice of law in which cases were docketed long after the ban had gone into effect." The circuit court noted that even if it were to give respondent the benefit of the doubt that she misunderstood the ban, respondent failed to produce the documents she argued would support her contention that all of the cases were in progress before the ban went into effect. The court concluded that the ban on private practice was clear to respondent. Furthermore, even assuming respondent genuinely misunderstood the directives of the ban, the court found by "clear and convincing evidence that the suits were filed after the ban had gone into effect, and that the [r]espondent had not been retained prior to the date of the prohibition on private practice."

On the issue of respondent's representation of tenants in the District of Columbia case, the court found that her testimony was "simply incredible." The court explained:

The [r]espondent obviously could not testify that she had been contacted prior to the date of the ban. Therefore, she asks this court to believe that a lawyer with her years of experience, who had tried any number of serious felony cases in Prince George's County, and had done so for a number of years, now considered herself a "law clerk" for purposes of obtaining this case. She further asked this court to believe that the attorney to whom the case was being referred was going to divide the fee evenly with someone who was acting as a law clerk in the case. This court cannot and does not accept such an explanation. Based on the [r]espondent's lack of candor at the post conviction hearing, this court finds that the . . . [r]espondent has violated Rule 3.3(a)(1) and (4), and also Rule 8.4(c) and (d) of the Maryland Rules of Professional Conduct. This court further finds that [r]espondent's testimony that she was a law clerk was untrue and violated Rule 8.4(b), (c) and (d).

Respondent filed several exceptions to the circuit court's findings and proposed conclusions of law. She argues that the testimony she gave at the post conviction proceeding was not false or misleading. Rather, she asserts, because of her misinterpretation of the ban on private practice by public defenders and her belief that it did not apply to her circumstances, her post conviction testimony was not false or misleading. Respondent criticizes the facts found by the circuit court and claims that nothing in the record rebutted by clear and convincing evidence her interpretation. Further, respondent attacks Mr. Brown's memory and record keeping and then contends that Bar Counsel failed to show by clear and convincing evidence that she did not receive the cases prior to the ban.

Respondent also excepts to the circuit court's findings that she violated Rules 3.3(a)(1) and (4) and 8.4(c) and (d) based on her alleged representation of the tenants in the District of

Columbia. She essentially claims these findings were in error because she could not practice law in the District of Columbia, she merely referred the case to an attorney who was licensed to practice in that jurisdiction, and received no fees for the referral. Respondent also reiterates the mitigating evidence presented below with regard to her character and personal circumstances. Respondent makes no recommendation for sanctions.

We have examined the record and conclude that all of the circuit court's findings and proposed conclusions of law are supported by clear and convincing evidence. We shall begin first with the misconduct charges arising from the employment discrimination case respondent filed in the United States District Court. Bar Counsel alleges that respondent, during a December 5, 1995, deposition taken in connection with that case, testified under oath that she had acted as a "law clerk" and had not represented, in her capacity as an attorney, any tenants associated with a fire in the District of Columbia. Bar Counsel argued, and the circuit court found, that this testimony was false and misleading and that she did in fact represent, as an attorney, individuals associated with the fire. The circuit court specifically concluded that this testimony violated Rule 8.4(b), (c), and (d).

Rule 8.4(b) provides that "[i]t is professional misconduct for a lawyer to ... commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." The crime that respondent allegedly committed is perjury because of her testimony that she acted as a law clerk rather than a lawyer in the District of Columbia case and therefore did not represent clients after the civil practice ban went into effect. The circuit court did not find respondent's deposition testimony about the extent of her involvement in the District of Columbia case credible. We echo the circuit court's disbelief in respondent's explanation, particularly given her experience as a private lawyer and public defender. We believe respondent lied in her deposition when she testified that she did not represent the individuals in

the District of Columbia matter. We note that we are not aware whether respondent has been charged criminally with perjury. As this Court has explained, however,

> a criminal conviction is not required in order to find a violation of Rule 8.4. All that is required is proof by clear and convincing evidence of conduct that constitutes a commission of the offense. *Attorney Griev. Comm'n v. Proctor,* 309 Md. 412, 418, 524 A.2d 773, 776 (1987). If the evidence presented at the hearing is sufficient to sustain a finding by clear and convincing evidence that the conduct occurred, the fact that a criminal conviction did not result from the conduct or that the judgment was reversed does not preclude a finding of misconduct. *See Attorney Griev. Comm. v. Breschi,* 340 Md. 590, 667 A.2d 659 (1995) (holding that evidence showed a wilful failure to pay taxes and a violation of Rule 8.4(d) despite fact that there was no criminal prosecution); *Attorney Griev. Comm'n v. Proctor,* 309 Md. 412, 418, 524 A.2d 773, 776 (1987); *Attorney Griev. Comm'n v. Deutsch,* 294 Md. 353, 366, 450 A.2d 1265, 1271 (1982).

*Garland,* 345 Md. at 394–95, 692 A.2d at 471. We sustain the circuit court's conclusion that respondent violated Rule 8.4(b).

 In connection with the same deposition testimony, respondent excepts to the findings of the circuit court that she also violated Rule 8.4(c) and (d) and Rule 3.3(a)(1) and (4). These exceptions are without merit. Consonant with the circuit court's conclusion that respondent committed perjury, respondent clearly violated Rule 8.4(c) because her testimony, made under oath, was, at the very least, dishonest, deceitful, and misrepresented the truth about her involvement in the case. Additionally, we have held that perjury committed by an attorney admitted to practice in this state constitutes conduct prejudicial to the administration of justice and violates Rule 8.4(d): "[P]erjury is conduct reeking of moral turpitude; involving dishonesty, fraud, deceit, or misrepresentation; and prejudicial to the administration of justice." *State Bar Ass'n v. Rosenberg,* 273 Md. 351, 355, 329 A.2d 106, 108. We have declined to define Rule 8.4(d) narrowly and instead have

recognized that conduct that impacts on the image or the perception of the courts or the legal profession and that engenders disrespect for the courts and for the legal profession may be prejudicial to the administration of justice. Lawyers are officers of the court and their conduct must be assessed in that light.

*Richardson,* 350 Md. at 368, 712 A.2d at 532 (citation omitted). Going on in *Richardson,* we commented that a lawyer's act of dishonesty, fraud, or deceit might cause the public to lose confidence in other lawyers and the judicial system as a whole. *Id.* (citing *State Bar Ass'n v. Agnew,* 271 Md. 543, 549, 318 A.2d 811, 814 (1974)). Accordingly, we also deny respondent's exceptions and sustain the circuit court with regard to Rule 8.4(c) and (d).

■ Turning to respondent's exceptions as to Rule 3.3(a)(1) and (4) and their application to her conduct during the deposition connected with her suit against the Public Defender, the circuit court found, and we believe it abundantly clear, that respondent lied under oath while providing testimony during that deposition. We recently held that false or misleading statements made by a lawyer to a judge violates Rule 3.3(a)(1). *See Attorney Grievance Comm'n v. Brown,* 353 Md. 271, 292, 725 A.2d 1069, 1079 (1999). The deposition testimony was material testimony related to respondent's suit against her employer, therefore, in violation of Rule 3.3(a)(4), respondent offered evidence she knew to be false. Even though she did not represent herself while testifying, candor by a lawyer, in any capacity, is one of the most important character traits of a member of the Bar. *See generally Attorney Grievance Comm'n v. Myers,* 333 Md. 440, 449, 635 A.2d 1315, 1319 (1994); *Attorney Grievance Comm'n v. Levitt,* 286 Md. 231, 238, 406 A.2d 1296, 1299 (1979). We therefore sustain the circuit court with respect to Rule 3.3(a)(1) and (4).

We turn now to the misconduct charges arising from respondent's testimony in the post conviction hearing. As we have discussed, respondent was questioned during that hearing about allegedly representing private clients after public

defenders were prohibited from doing so. Respondent claimed these clients contacted her before the ban went into effect, but had no documents supporting this contention because she had given them to another attorney, Mr. Brown, to wind up and he refused to turn them over. Mr. Brown testified that he had no such documents. Respondent claims in her exceptions that Mr. Brown's memory as to this matter is deficient and that the circuit court "was simply mistaken when [it] found that Mr. Brown never received any documents which would show that the contacts with the clients occurred before the ban."

Respondent's exceptions are without merit. The circuit court went to great lengths, by continuing the hearing, to provide respondent with the opportunity to produce the records supposedly exonerating her of these charges. Respondent still could not produce the necessary records. The circuit court found that Bar Counsel had proved by clear and convincing evidence that respondent began representing the clients after the 1990 ban went into effect. It is clear, then, that respondent gave false and misleading testimony when she testified as a witness in the post conviction proceedings. Accordingly, respondent violated Rule 3.3(a)(1) in providing this testimony. We overrule her exceptions and sustain the trial court's findings and proposed conclusions of law.

### III. Sanction

We have stated repeatedly that the purpose of disciplinary proceedings is to protect the public and the integrity of this profession, not to punish the individual offender. *Attorney Grievance Comm'n v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997); *Goldsborough,* 330 Md. at 364, 624 A.2d at 513. "[T]he public interest is served when this Court imposes a sanction which demonstrates to members of the legal profession the type of conduct that will not be tolerated." *Myers,* 333 Md. at 447, 635 A.2d at 1318. *See also Breschi,* 340 Md. at 601, 667 A.2d at 665. The severity of the sanction varies with the circumstances of each case and takes into account mitigating factors. *Glenn,* 341 Md. at 484, 671 A.2d at 480; *Powell,* 328 Md. at 300, 614 A.2d at 114. We said in

*Myers,* 333 Md. at 449, 635 A.2d. at 1319, that "[c]andor and truthfulness are two of the most important moral character traits of a lawyer." Tactics involving dishonesty, fraud, or deceit, carry the risk of the ultimate sanction by this Court. In *Attorney Grievance Commission v. Mandel,* 294 Md. 560, 587–88, 451 A.2d 910, 923 (1982) (quoting *State Bar Ass'n v. Agnew,* 271 Md. 543, 553, 318 A.2d 811, 817 (1974)), we said:

> "... [T]his Court has consistently adhered to the view, both prior to 1970 (when we reviewed disciplinary actions only on appeal at the instance of the respondent-attorney), *Balliet v. Balto. Co. Bar Ass'n, supra; Fellner v. Bar Ass'n,* [213 Md. 243, 131 A.2d 729 (1957)]; *In the Matter of Lombard,* 242 Md. 202, 218 A.2d 208 (1966); *In Re Williams,* 180 Md. 689, 23 A.2d 7 (1941); and since that date (when we assumed original and complete jurisdiction over these proceedings), *Bar Ass'n v. Marshall,* [269 Md. 510, 307 A.2d 677 (1973)]; *Bar Ass'n v. Cockrell,* 270 Md. 686, 313 A.2d 816 (1974); *Maryland St. Bar Ass'n v. Callanan,* 271 Md. 554, 318 A.2d 809 (1974), that when a member of the bar is shown to be willfully dishonest for personal gain by means of fraud, deceit, cheating or like conduct, absent the most compelling extenuating circumstances, not shown to be present here, disbarment followed as a matter of course. To do other than disbar the respondent in this case, therefore, would constitute a travesty of our responsibility." [Alterations in original.]

In *Myers,* 333 Md. 440, 635 A.2d 1315, the attorney lied to a district court judge and earlier had been suspended for unrelated conduct in which the attorney falsified a letter. Noting that the attorney had lied in furtherance of personal gain and in order to hide his misdeeds, this Court held Myers violated Rule 3.3(a)(1) and Rule 8.4(c), which, under the circumstances of that case, warranted that he be disbarred. *Id.* at 451, 635 A.2d at 1320.

In its Recommendation for Sanctions filed in this Court, Bar Counsel recommends that respondent be disbarred, noting that "[r]espondent has breached the most fundamental duty of

an officer of the Court" by giving false or misleading testimony in both the post conviction proceeding and the deposition relating to respondent's federal suit against her employer, and by destroying and lying about evidence during her federal claim.

Respondent already has been sanctioned by the United States District Court, which we held, *supra*, was conclusive in this Court as a violation of Rule 3.4(a) and Rule 8.4(c) and (d). In addition, we sustain the circuit court's conclusions that respondent violated Rule 3.3(a)(1) and (4) and Rule 8.4(b), (c), and (d) for her conduct in lying about her representation of private clients. Respondent, an officer of the court, gave false testimony in a series of judicial proceedings and at no time ever admitted the falsity of her testimony or showed any remorse. A federal court has found that she destroyed relevant evidence and lied in a deposition. She has seemingly developed a pattern of deceit in court proceedings. We said twenty-five years ago in *Rosenberg*, 273 Md. at 355, 329 A.2d at 108: "[M]aking false statements ... plainly violates the disciplinary rule on misconduct. Indeed, perjury is conduct reeking of moral turpitude; involving dishonesty, fraud, deceit, or misrepresentation; and prejudicial to the administration of justice." While Rosenberg had been convicted of perjury, we recognized that the giving of false testimony itself constituted attorney misconduct. *Id.* The serious nature of such misconduct often warrants disbarment.

In the case at bar, respondent has engaged in a continuing pattern of misconduct and has given false testimony in the federal and state judicial systems. She has exhibited no remorse nor has she ever admitted to her misconduct. The very integrity of the judicial system demands that the attorneys who practice in this state, who represent clients in the courts, and who interact in judicial matters with the courts do so with absolute honesty and personal integrity. We cannot permit actions such as those that occurred here, which affect not only the personal integrity of respondent but the integrity of the courts, to go unpunished.

We thus order that respondent be disbarred.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715c, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST ELVIRA M. WHITE.

Chief Judge BELL and Judge ELDRIDGE would impose an indefinite suspension.