763 A.2d 175

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Robert Harley BEAR.**

**Misc. AG No. 32, Sept. Term, 1999.**

Court of Appeals of Maryland.

Dec. 8, 2000.

Melvin Hirshman, Bar Counsel and John C. Broderick, Asst. Bar Counsel for the Attorney Grievance Com'n of Maryland, for Petitioner.

Joseph R. Whaley, Rockville, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY *, RAKER, WILNER, CATHELL and HARRELL, JJ.

RODOWSKY, Judge.

In this attorney grievance matter Bar Counsel's entire case consisted of introducing into evidence the opinion by the Superior Court of the District of Columbia (the Superior Court) in *Maxwell v. Gallagher*, Civil Action No. 88–10687,

---

* Rodowsky, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

and the opinion by the District of Columbia Court of Appeals in *Maxwell v. Gallagher*, 709 A.2d 100 (D.C.1998). The latter affirmed that part of the judgment of the Superior Court which ordered, based on conflict of interests, rescission against two attorneys of a corporate stock issuance. The principal question presented here is whether Bar Counsel may make offensive use of nonmutual collateral estoppel where the original findings of fact to which preclusive effect is sought to be given were made under a less stringent standard of proof than is required in an attorney disciplinary action. As explained below we shall hold that collateral estoppel, *i.e.*, issue preclusion, may not be based on the Superior Court judgment. Further, we shall hold that the opinions of the District of Columbia courts were not admissible in evidence, on the ground on which they were admitted over objection, to prove the facts which the Superior Court found based on disputed testimony.

*Maxwell* in the caption of the Superior Court action is James S. Maxwell (Maxwell). At the time of the events with which we are concerned here, Maxwell and the respondent, Robert H. Bear (Bear), were partners in the practice of law in the District of Columbia. Both were also admitted to the bar of this Court. Bar Counsel brought charges against both, arising out of their firm's having acquired eleven of the one hundred outstanding shares of the stock of Gallagher & Company, a District of Columbia corporation that was engaged in the real estate brokerage business.

Violation of Maryland Rule of Professional Conduct (MRPC) 1.8(a) was the principal charge brought by Bar Counsel against Maxwell and Bear. MRPC 1.8(a) states:

"A lawyer shall not enter into a business, financial or property transaction with a client unless:

"(1) The transaction is fair and equitable to the client; and

"(2) The client is advised to seek the advice of independent counsel in the transaction and is given a reasonable opportunity to do so."

No disciplinary proceedings have been brought in the District of Columbia based on the transaction that is the subject of the Maryland charges.[1]

Our tale begins in 1984 when Eugene Gallagher (Gallagher), a real estate broker then employed at Merrill Lynch, and Maxwell met in connection with the latter's purchase of investment properties. In 1986 they formed, but never funded, a corporation that was to serve as the general partner in limited partnerships created to buy and sell apartment buildings. Gallagher subsequently decided to set up his own real estate brokerage business, and in July 1986 he, Maxwell, and Bear leased offices on McKinley Street in the District of Columbia for the real estate business and for the law practice. The law firm anticipated being engaged to handle legal work generated by the real estate transactions.

Gallagher & Company was incorporated in October 1986 with Gallagher, Maxwell, and Bear serving as the interim directors, pending the organizational meeting of shareholders. That meeting was not formally held until March 23, 1988.

In the interim, two real estate brokers, Daniel O'Lone (O'Lone) and William Pollard (Pollard), left Merrill Lynch and joined Gallagher & Company. Each expected to become a shareholder in Gallagher & Company. Pollard had legal troubles of a civil and potentially criminal nature. Also during

---

1. MRPC 8.5(a) provides that "[a] lawyer admitted by the Court of Appeals to practice in this State is subject to the disciplinary authority of this State for a violation of these rules in this or any other jurisdiction."

Rule 1.8(a) of the District of Columbia Rules of Professional Conduct reads as follows:

"(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

"(1) The transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

"(2) The client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

"(3) The client consents in writing thereto."

this period Maxwell and Bear, either individually or through their partnership, represented Gallagher & Company, Gallagher individually, O'Lone, and Pollard in various legal matters.[2]

With respect to the stock, Maxwell arranged for a meeting attended by Gallagher, Pollard, O'Lone, Maxwell, and Bear on December 18, 1987. Gallagher was under the impression that the purpose of the meeting was to discuss one or more disputes with Merrill Lynch concerning commissions in which the law firm was representing Gallagher & Company. The meeting actually involved the division of ownership in Gallagher & Company, and discussions at the meeting became very heated. The Superior Court found that "Mr. Bear asked Mr. Maxwell why their presence at the meeting was necessary, to which Mr. Maxwell replied that they were there to ensure that the law firm got business." The Superior Court also found an absence of any "evidence that the option of securing new and independent counsel was discussed to protect the interest of the named persons and corporate entity." It was Maxwell, in

---

**2.** The judge of the Circuit Court for Montgomery County to whom this matter was referred for hearing found from the two District of Columbia opinions, the pleadings in this action, and the memoranda of the parties that there was no dispute that the legal work described below had been done (numerals identify paragraphs in the circuit court judge's findings of fact):

"7. Maxwell & Bear represented Mr. Gallagher regarding threatened legal action from Merrill Lynch for recruitment of its sales agents, a complaint lodged with a realty board, a fee dispute, and a dispute with Merrill Lynch regarding unpaid commissions.

"8. Maxwell & Bear represented Mr. Pollard concerning the dispute with Merrill Lynch over the unpaid commissions, a criminal investigation and grand jury proceedings involving one of Mr. Pollard's previous employers, a civil proceeding involving a Florida bank, and the refinancing of Mr. Pollard's home.

"9. Maxwell & Bear represented Mr. O'Lone in the unpaid commissions dispute with Merrill Lynch.

"10. Maxwell & Bear represented Gallagher & Company regarding the dispute with Merrill Lynch, a lease for property on East–West Highway, a commission and fee dispute involving two Gallagher & Company sales agents, and the negotiation of a lease for property on Arlington Road for new office space."

the view of the Superior Court, who was "the more active partner in this scenario and throughout the events which [gave] rise to [the] action." Further describing these events the Superior Court said that "[t]o insure its relative position in the corporation, the law firm, more specifically, Mr. Maxwell, helped to draw the battle lines between Mr. Gallagher and Messrs. Pollard and O'Lone."

On January 28, 1988, the five individuals again met and signed a document dividing the stock in Gallagher & Company as follows: Gallagher, forty-nine shares; Pollard, twenty shares; O'Lone, twenty shares; Maxwell & Bear, eleven shares. O'Lone and Pollard each paid between $10,000 and $11,000 for their stock. Although the law firm took the position in the Superior Court that its stock was issued in payment for legal services, neither those services nor the stock were ever valued.

The District of Columbia Court of Appeals selected for inclusion in its opinion what the Superior Court had found to be "one of 'the most blatant examples' " of breach of fiduciary duty in these relationships. *Maxwell*, 709 A.2d at 103 n. 6. It "was Maxwell's first 'advis[ing] Mr. Gallagher that resolution of Mr. Pollard's ownership interest . . . should await resolution of [Mr. Pollard's] legal difficulties,' then 'in an about face' providing 'contrary advice to Mr. Pollard to move with dispatch in obtaining an interest in the corporation' by which Pollard became beholden to Mr. Maxwell." *Id.*

Stock in Gallagher & Company was issued in March 1988 in the proportions that had been agreed upon in January. The Superior Court found that thereafter, "Mr. Maxwell belatedly advised Mr. Gallagher in late March 1988 that [Mr. Gallagher] should acquire independent legal counsel." The District of Columbia trial court also found that Maxwell told O'Lone that Maxwell had recommended a specific attorney to Gallagher because Maxwell could control that attorney.

In May 1988, Pollard's legal difficulties led to the sale of his stock in Gallagher & Company to O'Lone for $35,000. The purchase money was obtained by a bank loan to Gallagher &

Company which was personally guaranteed by Gallagher and O'Lone. Gallagher & Company then loaned that money to O'Lone to enable him to purchase Pollard's stock. Following the sale, Gallagher held forty-nine percent of the corporation, O'Lone held forty percent, and the firm of Maxwell & Bear held eleven percent. The Superior Court found that "Mr. Maxwell told Mr. O'Lone that they were now in control of the company and had the necessary voting power to block any effort of Gallagher & Company to recover from Mr. O'Lone if he did not pay back the money he owed to the company for the purchase of Mr. Pollard's stock."

In October 1988 Gallagher & Company demanded the return of the stock issued to Maxwell & Bear. This prompted Maxwell and the law firm to file a declaratory judgment action in the Superior Court seeking confirmation of the law firm's right to retain ownership of the shares issued to it. Gallagher & Company, Gallagher, and O'Lone counterclaimed, "adding Bear as a counter-defendant." *Maxwell,* 709 A.2d at 101.

The Superior Court filed a sixty-one page opinion in the action containing fifty-six paragraphs of fact-findings. That court ordered that the "defendant/counter-plaintiffs are entitled to the return of the eleven (11) shares of stock" and that they "may by this Order take the steps necessary to void the stock certificates issued to the law firm." The Superior Court further concluded that there were no compensatory damages, but it awarded punitive damages against Maxwell, Bear, and the law firm in the amount of $75,000. In a footnote to the conclusions of law portion of its opinion, the Superior Court said with respect to Bear:

"Throughout the events which are the subject of this action, Mr. Maxwell was the primary actor; however, his acts are imputed to the law firm and the remaining partner, Mr. Bear. The evidence of record further demonstrates that Mr. Bear had knowledge of the activities of Mr. Maxwell, and even on one (1) occasion questioned the presence and participation of the firm in the stock distribution discussions; however, he neither withdrew from the fracas nor required that the firm adhere to the mandatory require-

ments of the Code of Professional Responsibility as discussed herein."

The District of Columbia Court of Appeals affirmed that portion of the judgment voiding the stock issuance to Maxwell & Bear based on breach of the duty of loyalty, but the appellate court reversed the punitive damages award. *Maxwell*, 709 A.2d at 101.

Thereafter Bar Counsel brought the instant disciplinary proceeding against Maxwell and against Bear. Maxwell consented to a reprimand so that this action continues only as to Bear. We referred the matter for hearing to Judge D. Warren Donohue of the Circuit Court for Montgomery County before whom Bar Counsel introduced the two opinions of the District of Columbia courts and rested. Bear produced no evidence.

Before Judge Donohue, and in this Court, Bar Counsel contended that the portion of the judgment of the Superior Court voiding the stock issuance to the law firm precluded Bear from contesting any of the fact-findings of the Superior Court that were necessary to that judgment. It is Bar Counsel's position that the Superior Court's findings of fact are conclusive on Bear so that all that remains for this Court to do is to determine whether those facts establish a violation of the Maryland Rules of Professional Conduct. Bar Counsel raised this issue by a motion *in limine* which Judge Donohue denied. After holding that the Superior Court fact-findings were not conclusive on Bear, Judge Donohue admitted the two opinions into evidence, accepting Bar Counsel's argument that the opinions could be taken as evidence of the facts found therein under Maryland Rule 5–201, dealing with judicial notice of adjudicative facts.

In view of his holding that issue preclusion did not apply, Judge Donohue weighed the evidence and concluded that Bar Counsel had failed to establish by clear and convincing evidence that Bear was representing both himself and one or more of Gallagher & Company, Gallagher, O'Lone, and/or Pollard in the discussions culminating in the acquisition by the law firm of stock in Gallagher & Company. Accordingly,

Judge Donohue found no violation of MRPC 1.8 or of the companion rule, MRPC 1.7. Of the other rules of professional conduct charged to have been violated, Judge Donohue found only a violation of MRPC 1.5 "by charging a fee for services rendered to Gallagher & Company and Mr. Gallagher that were never itemized or particularized." Both parties filed exceptions which, to the extent necessary, are hereinafter described.

## I

Bar Counsel's principal argument is that the opinions of the two District of Columbia courts are admissible because they evidence judgments and the factual basis for those judgments. The judgments are said by Bar Counsel to be relevant to the instant disciplinary proceeding because they form the basis for applying the doctrine of issue preclusion against Bear. We hold that issue preclusion does not apply under the circumstances presented in this case.

Maryland Rule 16–710(d) requires that Bar Counsel must prove attorney misconduct by clear and convincing evidence before an attorney may be disciplined. *Attorney Grievance Comm'n v. James,* 355 Md. 465, 483, 735 A.2d 1027, 1037 (1999); *Attorney Grievance Comm'n v. White,* 354 Md. 346, 354, 731 A.2d 447, 452 (1999); *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 470, 671 A.2d 463, 474 (1996); *Attorney Grievance Comm'n v. Kemp,* 335 Md. 1, 9, 641 A.2d 510, 514 (1994). The clear and convincing standard places a burden of persuasion upon Bar Counsel that is greater than the preponderance of the evidence standard typically used in civil cases, such as the action in the Superior Court. *Attorney Grievance Comm'n v. Mooney,* 359 Md. 56, 79, 753 A.2d 17, 29 (2000).

" 'The requirement of 'clear and convincing' or 'satisfactory' evidence does not call for 'unanswerable' or 'conclusive' evidence. The quality of proof, to be clear and convincing, has also been said to be somewhere between the rule in ordinary civil cases and the requirement of criminal procedure—that is, it must be more than a mere preponderance

but not beyond a reasonable doubt. It has also been said that the term 'clear and convincing' evidence means that the witness to a fact must be found to be credible, and that the facts to which they have testified are distinctly remembered and the details thereof narrated exactly and in due order, so as to enable the trier of the facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. Whether evidence is clear and convincing requires weighing, comparing, testing, and judging its worth when considered in connection with all the facts and circumstances in evidence.' "

*Id.* (quoting *Berkey v. Delia,* 287 Md. 302, 320, 413 A.2d 170, 178 (1980)).

 Here, Bar Counsel seeks to make offensive use of nonmutual collateral estoppel, as distinguished from defensive use. We explained the difference in *Welsh v. Gerber Prods., Inc.,* 315 Md. 510, 555 A.2d 486 (1989).

"Offensive use of nonmutual collateral estoppel occurs when a plaintiff seeks to foreclose a defendant from relitigating an issue the defendant has previously litigated unsuccessfully in another action against a different party. Defensive use of nonmutual collateral estoppel occurs when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against a different party."

*Id.* at 517–18 n. 6, 555 A.2d at 489–90 n. 6 (quoting *United States v. Mendoza,* 464 U.S. 154, 159 n. 4, 104 S.Ct. 568, 571–72 n. 4, 78 L.Ed.2d 379, 384 n. 4 (1984)).

The Restatement (Second) of Judgments (1982) (Restatement) expressly rejects offensive use of collateral estoppel where the burdens of proof differ in the manner presented here. The Restatement's position is as follows:

"Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

. . . .

"(4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or *the adversary has a significantly heavier burden than he had in the first action*[.]"

Restatement § 28, at 273 (emphasis added). The comments to this section explain the rationale underlying this exception.

"To apply issue preclusion in the cases described in Subsection (4) would be to hold, in effect, that the losing party in the first action would also have lost had a significantly different burden been imposed. While there may be occasions when such a holding would be correct, *there are many others in which the allocation and weight of the burden of persuasion (or burden of proof, as it is called in many jurisdictions) are critical in determining who should prevail.*"

Restatement § 28, cmt. f, at 281 (emphasis added).

The Restatement's position seems to be generally accepted by federal and state courts. *See, e.g., United States v. Bostian,* 59 F.3d 474, 480 (4th Cir.1995), *cert. denied,* 516 U.S. 1121, 116 S.Ct. 929, 133 L.Ed.2d 857 (1996) ("As a general rule, evidence of a determination made in a civil action where the party with the burden of persuasion must establish facts only by a preponderance of the evidence is not admissible to prove an element of a criminal prosecution where the government must establish elements of the charged offense beyond a reasonable doubt"); *United States v. Meza–Soria,* 935 F.2d 166, 169 (9th Cir.1991) ("By parity of reasoning, the difference in standards of proof must preclude the use of civil proceeding findings to establish facts in a criminal case"); *Colorado Dog Fanciers v. Denver,* 820 P.2d 644, 649 (Colo.1991) (en banc) ("[W]e hold that no . . . determination made for regulatory purposes, where the applicable burden of proof is by a preponderance of the evidence, may be used to support a subsequent criminal charge"); *State v. Yelli,* 247 Neb. 785, 530 N.W.2d

250, 254, *cert. denied,* 516 U.S. 915, 116 S.Ct. 304, 133 L.Ed.2d 209 (1995) ("[A] party who has carried the burden of establishing an issue by a preponderance of the evidence is not entitled to assert preclusion in a later action that requires proof of the same issue by a higher standard"). The result reached by these courts and adopted by the Restatement comports with the views of the major treatises on federal civil procedure. 18 C.A. Wright, A.R. Miller & E.H. Cooper, *Federal Practice and Procedure* § 4422, at 214 (1981) (footnote omitted) ("[A] party who has carried the burden of establishing an issue by a preponderance of the evidence is not entitled to assert preclusion in a later action that requires proof of the same issue by a higher standard"); 18 J.W. Moore, *Moore's Federal Practice* § 132.02[4][e], at 132–62 (3d ed.2000) (footnote omitted) ("The doctrine of issue preclusion does not apply when the party seeking to benefit from preclusion has a significantly heavier burden in the subsequent action than in the prior action").

Jurisdictions that have dealt with the precise issue presented by this case almost uniformly refuse to give preclusive effect to issues decided in a civil case under a preponderance of the evidence standard in a subsequent attorney discipline proceeding. Stated otherwise, the other jurisdictions which have encountered this issue have refused to apply offensive collateral estoppel in an attorney discipline proceeding unless the burden of proof in the prior proceeding equaled or exceeded the clear and convincing burden which governs disciplinary proceedings. *See, e.g., In re Levine,* 174 Ariz. 146, 847 P.2d 1093, 1103, *supplemented by* 176 Ariz. 535, 863 P.2d 254 (1993) ("We find no error [in the admission of prior judicial rulings which accompanied the full documentary history of those civil cases] because neither the committee nor the commission gave these rulings preclusive effect. . . ."); *Rosenthal v. State Bar of California,* 43 Cal.3d 612, 238 Cal.Rptr. 377, 738 P.2d 723, 738 (1987), *appeal dismissed,* 488 U.S. 805, 109 S.Ct. 35, 102 L.Ed.2d 15 (1988) ("[No error in admitting] civil findings, conclusions and judgments [because they] were not judicially noticed for their truth or given preclusive effect. . . ."); *In re Egbune,* 971 P.2d 1065, 1067 (Colo.), *cert. denied,* 526 U.S.

1115, 119 S.Ct. 1762, 143 L.Ed.2d 793 (1999) (issue preclusion held not to apply "because the burden of proof in a civil action is a preponderance of the evidence [but] in a lawyer discipline proceeding proof is by clear and convincing evidence"); *Florida Bar v. Bennett*, 276 So.2d 481, 482 (Fla.1973) (per curiam) ("The results of such a civil suit are not necessarily conclusive of disciplinary action"); *Iowa Supreme Court Board of Professional Ethics & Conduct v. D.J.I.*, 545 N.W.2d 866, 872 n. 5 (Iowa 1996), *amended by* 1996 Iowa Supp. LEXIS 79 (Apr. 17, 1996) (citing Iowa Sup.Ct.R. 118.7) ("[C]ourt rule 118.7 requires that the burden of proof in the prior civil action sought to have preclusive effect in the subsequent disciplinary action must be greater than a mere preponderance of the evidence"); *In re Kotts*, 364 N.W.2d 400, 405 (Minn.1985) ("[W]e note that the standard of proof in the bankruptcy proceedings was a fair preponderance of the evidence, while the Director in these disciplinary proceedings must prove the allegations by clear and convincing evidence"); *Nebraska State Bar Ass'n v. Gudmundsen*, 145 Neb. 324, 16 N.W.2d 474, 476 (1944) ("[T]he finding in a civil action that an attorney at law has been guilty of conduct justifying disbarment is not conclusive on the same question when presented for determination in an action for disbarment"); *In re Bruzga*, 142 N.H. 743, 712 A.2d 1078, 1079 (1998) ("We hold that the doctrine of offensive collateral estoppel may be applied in attorney discipline proceedings when a prior proceeding was subject to a burden of proof equaling or exceeding the clear and convincing burden governing disciplinary proceedings"); *In re Gygi*, 273 Or. 443, 541 P.2d 1392, 1395 (1975) (in banc) (per curiam) ("[T]here is a higher standard of proof in disciplinary actions than . . . in . . . federal securities [cases and, c]ollateral estoppel is not applicable when the standard of proof in the second proceeding is greater than that which applied in the first").

Provision is made in the rules dealing with Discipline and Inactive Status of Attorneys for conclusive proof in reciprocal attorney discipline cases by Maryland Rule 16–710.e.1. That rule in part provides:

"A final adjudication in a disciplinary proceeding by a judicial tribunal or a disciplinary agency appointed by or acting at the direction of a judicial tribunal that an attorney has been guilty of misconduct is conclusive proof of the misconduct in the hearing of charges pursuant to this Rule."

See also Attorney Grievance Comm'n v. Richardson, 350 Md. 354, 365–66, 712 A.2d 525, 530–31 (1998) (citing numerous cases applying the rule).

Here, Bar Counsel refers us to Attorney Grievance Comm'n v. Sabghir, 350 Md. 67, 710 A.2d 926 (1998), and urges us to extend the holding of that case to the circumstances at hand. Sabghir was a reciprocal discipline action. There we held, applying Rule 16–710.e.1, that the factual findings underlying a judgment by the Appellate Division of the Supreme Court of New York that Sabghir had committed ten violations of that state's Code of Professional Responsibility would be conclusively applied against Sabghir in Maryland disciplinary proceedings, even though New York's standard of proof was a preponderance of the evidence. We noted that Sabghir received notice and the opportunity to be heard in the New York State disbarment action. Id. at 79, 710 A.2d at 932. We relied upon the reasoning in a decision by the District of Columbia Court of Appeals that treated as conclusive findings based on New York's lower standard of proof because " 'the potential loss of livelihood through disbarment is more aptly categorized as only a property right' " and the District of Columbia's higher standard of proof was not constitutionally mandated. Id. at 82, 710 A.2d at 933 (quoting In re Benjamin, 698 A.2d 434, 440 (D.C.1997)). Also of importance was that there was no evidence that New York treated attorney discipline matters " 'less seriously or wholly inconsistently with the manner exercised by this Court.' " Sabghir, 350 Md. at 83, 710 A.2d at 934 (quoting Attorney Grievance Comm'n v. Gittens, 346 Md. 316, 327, 697 A.2d 83, 88 (1997)).

Bar Counsel's request that we use Sabghir as a springboard is an appeal to practicality. The argument begins by noting the variety of ways in which information, including reported judicial decisions, concerning possible MRPC violations comes

to Bar Counsel's attention. We are asked to consider the difficulty and expense involved in strictly proving again facts that have produced a judgment adverse to the attorney where those facts constitute a MRPC violation. We are unable, however, to adopt Bar Counsel's argument. *Maxwell v. Gallagher* in the Superior Court was not a disciplinary proceeding.

In *Attorney Grievance Comm'n v. Miller*, 310 Md. 163, 528 A.2d 481 (1987), Bar Counsel brought disciplinary proceedings against Miller based on his having been disciplined by the Interstate Commerce Commission under the agency's code of ethics governing the conduct of attorney's representing parties before that agency. Bar Counsel argued that "the opinion of the United States Court of Appeals for the District of Columbia Circuit, affirming the Interstate Commerce Commission's decision, [constituted] a 'final adjudication in a disciplinary proceeding by a judicial tribunal . . . that an attorney has been guilty of misconduct.' " *Id.* at 170, 528 A.2d at 485 (quoting former Rule BV10.e.1, the predecessor to Rule 16–710.e.1). We held that the federal appellate court was not sitting as a judicial tribunal in a disciplinary proceeding but was conducting a judicial review of an agency decision. *Id.* at 172, 528 A.2d at 485–86. Absent a rule similar to present Rule 16–701.e.1, there was no conclusive effect to either the agency or the appellate court determination.

Bar Counsel also relies upon *Attorney Grievance Comm'n v. Alison*, 349 Md. 623, 709 A.2d 1212 (1998). Collateral estoppel was not applied in that case because an element necessary for the application of that doctrine was not met. *Id.* at 634, 709 A.2d at 1217. Moreover, it appears that the hearing judge in *Alison* had the entire record before him from the original action and not just the ultimate conclusions of the trial court. *Id.* at 635, 709 A.2d at 1217 ("Judge Brennan considered the findings contained in Judge Noel's Memorandum and Order, the transcript of the proceedings before Judge Noel, and the opinion of the Court of Special Appeals. . . . A certified copy of the docket sheet was also admitted into evidence.").

For these reasons, the opinions of the two District of Columbia courts were not admissible as the foundation for applying offensive nonmutual collateral estoppel.

## II

Bar Counsel's fallback argument is that the opinions of the District of Columbia courts were properly admitted into evidence and that, absent any evidence by Bear, the opinions present facts that required the granting of a motion for judgment against Bear as to one or more of the charges. Bar Counsel submitted that the opinions were admissible under Maryland Rule 5–201 which in relevant part reads:

"(a) Scope of Rule. This Rule governs only judicial notice of adjudicative facts. . . .

"(b) Kinds of facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

■ Bear objected to the use of the opinions for any purpose. After Judge Donohue rejected Bar Counsel's issue preclusion argument, Rule 5–201 was the exclusive ground advanced by Bar Counsel before Judge Donohue for admitting the opinions. In this Court Bar Counsel does not argue that the opinions were admissible on any basis other than the basis advanced before the trial court. We hold that Judge Donohue erred in admitting the opinions on the basis on which they were received into evidence.

"As a general rule, a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it."

*M/V American Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir.1983).

Some United States courts of appeal when applying Fed. R.Ev. 201(b), from which Maryland Rule 5–201 is derived,

have stated that "were [it] permissible for a court to take judicial notice of a fact merely because it had been found to be true in some other action, the doctrine of collateral estoppel would be superfluous." *United States v. Jones,* 29 F.3d 1549, 1553–54 (11th Cir.1994). *See also Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.,* 969 F.2d 1384, 1388–89 (2d Cir. 1992); *Holloway v. Lockhart,* 813 F.2d 874, 878–79 (8th Cir. 1987). These cases recognize that under Fed.R.Ev. 201 a judicially noticed fact is conclusive. Maryland Rule 5–201(g) also gives conclusive effect to a judicially noticed fact in a civil case.[3]

In the instant matter it is unnecessary to decide whether, absent issue preclusion by judgment, judicial notice can ever be taken of facts found by a court in another proceeding. This is because "[a] judicially noticed fact must be one not subject to reasonable dispute." Md. Rule 5–201(b). The same language appears in Fed.R.Ev. 201. Thus, it has been held that judicial notice could not be taken of the finding in an earlier action that a corporation was a state actor, *Taylor v. Charter Med. Corp.,* 162 F.3d 827, 831 (5th Cir.1998), and that, in an action to set aside a settlement agreement in a class action as a fraudulent transfer, judicial notice could not be taken of a finding in another action that the settlement was fair and reasonable. *General Elec. Capital Corp. v.. Lease Resolution Corp.,* 128 F.3d 1074, 1081–83 (7th Cir.1997).

■ In the instant matter the Superior Court clearly recognized that Maxwell was the principal actor from the firm of Maxwell & Bear in the challenged transaction. Bear was a necessary party to the counterclaim seeking to cancel the stock held by the law firm. Indeed, the Superior Court seems to have supported its judgment against Bear either by imputing liability to him or by inferring sufficient knowledge on his

3. Maryland Rule 5–201(g) reads:

"The court shall instruct the jury to accept as conclusive any fact judicially noticed, except that in a criminal action, the court shall instruct the jury that it may, but is not required to, accept as conclusive any judicially noticed fact adverse to the accused."

part, or both. In the instant matter our concern is the culpability of Bear. Under these circumstances the opinions of the District of Columbia courts do not present facts that are "not subject to reasonable dispute" and that are "capable of accurate and ready determination." Rule 5–201(b)(2). Accordingly, the opinions were not admissible in evidence under Rule 5–201 for the purpose for which they were offered, and the charges must be dismissed.

**PETITION FOR DISCIPLINARY ACTION DISMISSED. COSTS TO BE PAID BY THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND.**