818 A.2d 219

**ATTORNEY GRIEVANCE COMMISSION**

v.

**Bruce David BLUM.**

**Misc. Docket AG, No. 11, Sept. Term, 2002.**

Court of Appeals of Maryland.

March 10, 2003.

Melvin Hirshman, Bar Counsel and Gail D. Kessler, Asst. Bar Counsel for Attorney Grievance Com'n, Petitioner.

Bruce David Blum, Rockville, for Respondent.

Argued before ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, and LAWRENCE F. RODOWSKY (retired, specially assigned), JJ.

BATTAGLIA, Judge.

Respondent Bruce David Blum (hereinafter "Blum") was admitted to the Bar of this Court on December 15, 1988, and thereafter, to the Bar of the District of Columbia. On March 21, 2002, the Attorney Grievance Commission of Maryland (hereinafter "Bar Counsel"), acting pursuant to Maryland Rule 16–709(a),[1] filed a petition for disciplinary action against Blum charging him with violating the following Maryland Rules of Professional Conduct (hereinafter "MRPC"): MRPC 1.15(a)(Safekeeping property),[2] MRPC 1.16(d)(Declining or Terminating Representation),[3] MRPC 3.3(a)(1) and (4)(Can-

---

1. Maryland Rule 16–709(a) states that "[c]harges against an attorney shall be filed by the Bar Counsel acting at the direction of the Review Board." This case arose and was processed under the attorney grievance rules in effect prior to July 1, 2001. Thus, we refer to the rules as they existed prior to that date. *See* Md. Rules Orders, p. 56, Maryland Rules, vol. 1 (2002) (ordering that "any matter pending before an Inquiry Panel, the Review Board, or the Court of Appeals pursuant to charges, a petition, or an application pending as of June 30, 2001 shall continue to be governed by the Rules in effect on June 30, 2001").

2. MRPC 1.15(a) provides:

 (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

3. MRPC 1.16(d) provides:

 (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such

dor Toward the Tribunal),[4] MRPC 3.4(a) and (b)(Fairness to Opposing Party and Counsel),[5] MRPC 8.1(a) and (b)(Bar Admission and Disciplinary Matters),[6] MRPC 8.4(c) and (d)(Misconduct).[7] The petition also charged Blum with violating Maryland Rules 16–606 (Name and Designation of Account),[8] 16–

---

as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

**4.** MRPC 3.3(a)(1) and (4) state:

(a) A lawyer shall not knowingly:
(1) make a false statement of material fact or law to a tribunal; (4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

**5.** MRPC 3.4(a) and (b) state:

A lawyer shall not:
(a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;
(b) falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law.

**6.** MRPC 8.1(a) and (b) state:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
(a) knowingly make a false statement of material fact; or
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

**7.** MRPC 8.4(c) and (d) state:

It is professional misconduct for a lawyer to:
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice.

**8.** Maryland Rule 16–606 states:

An attorney or law firm shall maintain each attorney trust account with a title that includes the name of the attorney or law firm and that clearly designates the account as "Attorney Trust Account",

607 (Commingling of Funds),[9] 16–609(Prohibited Transactions),[10] and Maryland Code, Sections 10–304 (Deposit of Trust Money) [11] and 10–306 (Misuse of Trust Money) [12] of the

"Attorney Escrow Account", or "Clients' Funds Account" on all checks and deposit slips. The title shall distinguish the account from any other fiduciary account that the attorney or law firm may maintain and from any personal or business account of the attorney or law firm.

**9.** Maryland Rule 16–607 states:

a. **General prohibition.** An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16–604 or permitted to be so deposited by section b. of this Rule.

b. **Exceptions.** 1. An attorney or law firm shall either (A) deposit into an attorney trust account funds to pay any fees, service charges, or minimum balance required by the financial institution to open or maintain the account, including those fees that cannot be charged against interest due to the Maryland Legal Services Corporation Fund pursuant to Rule 16–610 b 1(D), or (B) enter into an agreement with the financial institution to have any fees or charges deducted from an operating account maintained by the attorney or law firm. The attorney or law firm may deposit into an attorney trust account any funds expected to be advanced on behalf of a client and expected to be reimbursed to the attorney by the client.

2. An attorney or law firm may deposit into an attorney trust account funds belonging in part to a client and in part presently or potentially to the attorney or law firm. The portion belonging to the attorney or law firm shall be withdrawn promptly when the attorney or law firm becomes entitled to the funds, but any portion disputed by the client shall remain in the account until the dispute is resolved.

3. Funds of a client or beneficial owner may be pooled and commingled in an attorney trust account with the funds held for other clients or beneficial owners.

**10.** Maryland Rule 16–609 states:

An attorney or law firm may not borrow or pledge any funds required by these Rules to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose. An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer.

**11.** Section 10–304 states:

(a) General requirement.—Except as provided in subsection (b) of this section, a lawyer expeditiously shall deposit trust money into an attorney trust account.

(b) Exceptions—Direction of court.—Subsection (a) of this section does not apply if there is a court order to the contrary.

Business Occupations and Professions Article (1989, 2000 Repl.Vol.). The charges involved Blum's representation of Zahra Dianat, Latania Hubbard, Chris Kourkoulakos, John Watson, Paul Leopold, Christine Bernstein, Corlis Lesley Sellers, Sharon Clinton, Cathy Walter, Jacqueline Boucher, Steven Bullock, Deborah Sidall, Lindsey Asay, Vasilios Pappas, and Charnese Fletcher–Grimes.[13]

On March 27, 2002, pursuant to Maryland Rule 16–709(b), we referred the petition to Judge Joseph A. Dugan, Jr., of the Circuit Court for Montgomery County to conduct an evidentiary hearing and make findings of fact and conclusions of law. We also ordered that the evidentiary hearing was to commence "not later than thirty (30) days from the filing of the response and that no extension shall be granted except by Order of this Court."

On April 24, 2002, Blum filed his response, and on May 6, 2002, he filed a counterclaim in which he alleged malicious use of process and/or abuse of process. Bar Counsel responded by filing a motion to strike Blum's counterclaim, which was in fact, later granted.

While conducting discovery, it became apparent that discovery problems were going to derail the hearing that was supposed to occur within the thirty day limit set in our March 27, 2002 Order. On May 9, 2002, as a result, Bar Counsel filed a motion for extension of time in which it was represented that

---

(c) Same—Real estate transaction.—Notwithstanding subsection (a) of this section or any other law, a lawyer may disburse, at settlement in a real estate transaction, trust money that the lawyer receives in the transaction.

**12.** Section 10–306 states:

A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer.

**13.** The hearing judge concluded that there was not clear and convincing evidence to find that Blum committed the violations alleged by Bar Counsel with respect to Chris Kourkoulakos, John Watson, Paul Leopold, Jacqueline Boucher, Steven Bullock, and Deborah Sidall. Additionally, the allegations as to Charnese Fletcher Grimes were withdrawn.

Blum, Bar Counsel, and the lower court had agreed that July 8, 2002 was an appropriate date to commence the proceedings because it would enable the parties to complete discovery. On May 15, 2002, we granted that motion. On May 24, 2002, however, Blum sought an additional extension in his motion to "continue disciplinary hearing for appropriate time to obtain counsel and adequately prepare." This Court granted Blum's motion and set the hearing dates for September 4 and 5, 2002. In August of 2002, Blum sought, yet again, an extension of the hearing date in his supplemental motion to continue disciplinary proceeding. We denied that motion.

Also, as aforementioned, the discovery process was replete with problems. On June 6, 2002, Bar Counsel filed a motion for sanctions alleging Blum failed to respond to interrogatories and requests for documents and a motion for protective order claiming that Blum's notice of intention to take deposition and request for production of documents were oppressive, overly broad, and not calculated to lead to discoverable facts. On June 18, 2002, Judge Dugan conducted a hearing on these discovery motions, as well as on Bar Counsel's motion to strike Blum's counterclaim. During that hearing, the judge granted Bar Counsel's motion to strike Blum's counterclaim; Bar Counsel withdrew his motion for sanctions, and his motion for protective order was denied. On July 16, 2002, Bar Counsel filed his second motion for sanctions against Blum, again alleging that Blum had failed to respond to interrogatories. On August 16, 2002, less than three weeks before his disciplinary hearing, Blum filed a motion for sanctions claiming that the disciplinary action should be dismissed because Bar Counsel had willfully violated the rules of discovery. On that same day, Blum also filed a motion to recuse Judge Dugan, alleging that the judge's handling of the disciplinary matter had "been with such ineptitude as to prevent him from fairly presiding over a Disciplinary Hearing." Both of Blum's motions were denied.

Judge Dugan conducted evidentiary hearings on September 4 and 5, 2002. At the beginning of the September 4 hearing, Blum, during his opening argument, asserted that he was

willing to admit to most of the allegations against him. Thus, Blum, pursuant to his suggestion and the agreement of Bar Counsel, took the stand and, in response to questions from Bar Counsel, admitted many of the allegations contained in the petition for disciplinary action not disposed of as mentioned in n. 13, *supra.*

After Blum's testimony, Bar Counsel presented testimony from six additional witnesses and introduced over forty evidentiary exhibits. Blum presented no documentary evidence and no testimony, other than his own, which was related to his assertion that he had not deposited any unearned fees into his personal or operating accounts.

On September 5, 2002, the judge continued the proceedings to Friday, September 6, 2002. Blum protested this extension and declared that he would not appear because he had a brief due in the Court of Special Appeals on that day and because his family celebrated Rosh Hashanah early, although that holiday did not begin until sundown on the 6th. When the Court of Special Appeals was contacted by the hearing judge to determine if an extension could be granted for the filing of Blum's brief, Judge Dugan learned that on August 28, 2002, Blum's case had been dismissed by the court for failure to file a brief upon an earlier deadline.

After Judge Dugan ordered the September 6, 2002 hearing to proceed, Blum did, in fact, fail to appear. At the conclusion of the proceeding, Judge Dugan, based on Blum's admissions and upon testimonial and documentary evidence admitted during the evidentiary hearings, made oral findings of fact and conclusions of law, which were transcribed later for the record. We have summarized and reorganized those findings and conclusions below in order to better suit the needs of this opinion.

### 1. Zahra Dianat's Complaint and the Investigation Thereof

With respect to the complaint of Zahra Dianat, Judge Dugan found that on December 9, 1997, Ms. Dianat hired Blum to represent her in a December 10, 1997 protective

order hearing. Blum charged her $500 for that representation, which she paid for by credit card. Because Blum did not have a credit card machine, he used a colleague's, Jeffrey T. Sheehan's. Blum charged to Ms. Dianat's credit card $1500: a $500 fee for the protective order hearing, and a $1000 retainer fee to represent her in a divorce. Blum did not provide Ms. Dianat with a receipt for the charge. Mr. Sheehan provided Blum with a check for the amount that was charged on Ms. Dianat's credit card, minus a transaction fee, and Blum deposited that check into his personal checking account. Thereafter, Ms. Dianat contested the amount of the charge that was placed on her credit card, but the hearing judge did not find that she did not authorize the $1000 retainer charge for the divorce.

By letter dated January 9, 1998, which was mailed and faxed to Blum, Ms. Dianat terminated his representation and requested a refund of unused retainer funds. Blum did not respond to Ms. Dianat's letter. By letter dated April 6,1998, Blum acknowledged receipt of a complaint that Ms. Dianat filed with Bar Counsel and admitted that he owed her $720. He also represented that he was prepared to refund her that amount. Despite the representation, Blum did not return the money to Ms. Dianat. By letter dated November 25, 1998, Blum advised Ms. Dianat's new attorney, Floyd Willis, III, Esquire, that he had refunded the money to Ms. Diana, and attached a copy of check number 317 drawn on Blum's operating account at NationsBank. Blum altered the front of that check to appear as though it was made payable to Ms. Dianat when, in fact, it was made payable to a company named CMI for Blum's rent. Blum also included a copy of what he claimed was the back of Check 317 in order to show that the check had been negotiated. What he really included, however, was the copy of the back of a different negotiated check.

In a July 1, 1999 letter to Bar Counsel, Blum stated that the operating account upon which check 317 was written did not provide original negotiated checks. In addition, in a September 2, 1999 interview with Bar Counsel investigator John W. Reburn, Blum stated that he moved the unearned portion of

Ms. Dianat's retainer fee from his escrow account to his operating account. Blum also told Mr. Reburn that he returned the money owed to Ms. Dianat by check number 317. All of these statements, the hearing judge found, were false. In addition, Blum consistently failed to provide information about check number 317 to Bar Counsel, despite repeated requests.

On November 18, 1999, Bar Counsel served Blum with a subpoena requiring him to produce the check register for operating account No. 003–3389–6922 for the period of December 1, 1997 through December 30, 1999, as well as the original Check 317. On or about November 19, 1999, Blum filed a motion to quash the subpoena in the Circuit Court for Montgomery County. In that motion, Blum falsely stated that he did not receive negotiated checks from the account upon which Check 317 was drawn when Check 317 was negotiated, but that because of Bar Counsel's request, he had specifically ordered Check 317.

On January 24, 2000, in a hearing on Blum's motion to quash Bar Counsel's subpoena before the Honorable Martha G. Kavanaugh of the Circuit Court for Montgomery County, Blum falsely testified that when Check 317 was negotiated, he did not receive the original check, and that he did not begin receiving negotiated checks on his operating account until the end of 1998 or the beginning of 1999. Blum also falsely testified that the Bank told him it could not find the original Check 317, that Mr. Willis had requested the check, and that pursuant to that request, it had given the original to Mr. Willis. Thus the Bank, Blum prevaricated, was only able to provide him with a photocopy of Check 317, the photocopy that, in reality, he himself had manufactured and sent to Mr. Willis. In addition, Blum was found by the Circuit Court to have falsely testified during the January 24, 2000 hearing that by the time he deposited the check representing the charge to Ms. Dianat's credit card into his operating account, he had earned all of the funds.[14] In addition, Blum was found to have

---

14. Blum asserted that he had earned all of the funds that were charged to Ms. Dianat's credit card, but that she was owed $720 because of

falsely testified that the $720 owed Ms. Dianat was not an unearned fee. A further misrepresentation made during the January 24, 2000 hearing by Blum was that he did not know into which account he had deposited the check representing the charge placed on Ms. Dianat's credit card. Finally, at the end of the January 24, 2000 hearing, Judge Kavanaugh denied Blum's motion to quash and ordered that he produce the check register for Account No. 0039–3389–6922, titled "Law Offices, Bruce David Blum," his operating account for the period of December 1, 1997, through September 30, 1999, and the original cancelled check 317. Blum failed to produce those documents because, the hearing judge found, he had disposed of them "at some point in time . . . in the hopes that it would prevent [the] Court [and] the Attorney Grievance Commi[ssion]" from obtaining them.

Blum repeated these misrepresentations with respect to check 317 during an inquiry panel hearing. He also presented false evidence to the inquiry panel by producing notes from his client file concerning Ms. Dianat that he had altered.[15] Additionally, in a letter to Bar Counsel dated February 3, 2000, Blum would not advise into which account he had deposited the check representing the charge made on Ms. Dianat's credit card.

Finally, in a letter to Blum dated June 20, 2000, Bar Counsel requested retainer agreements, billing statements, and billable hour worksheets for approximately 30 clients. Rather than providing those documents, Blum stated in a

"some kind of credit." The hearing judge rejected Blum's assertion, finding that a "credit did not appear on any of the statements that this court reviewed . . . nor did [Blum] explain any basis for any credit that may have been given to her." Thus, the hearing judge found that Blum had not earned all of the money charged to Ms. Dianat's credit card when he deposited it in his personal account and that his testimony was false.

15. Blum claimed that his client notes were altered by Bar Counsel or someone else other than himself during the course of the disciplinary proceedings. The hearing judge found in "light of the document itself" that Blum's claim was "utterly outrageous" and false.

letter to Bar Counsel that he wanted an explanation for why they wanted the items. That letter, the hearing judge found, did not constitute a response to Bar Counsel's request and exemplified the "typical, evasive, and obstructive response that Mr. Blum continued to persevere in with Bar Counsel right up until the time and throughout the course of these proceedings."

Based upon these findings of fact with respect to Ms. Dianat, the hearing judge concluded that Blum violated MRPC 1.15(a)(Safekeeping Property), MRPC 3.3(a)(1) and (a)(4)(Candor Toward the Tribunal), MRPC 3.4(a) and (b)(Fairness to Opposing Party and Counsel), MRPC 8.1(a) and (b)(Bar Admission and Disciplinary Matters), MRPC 8.4(c) and (d)(Misconduct), Maryland Rule 16–609(Prohibited Transactions), and Maryland Code, Section 10–306 (Misuse of Trust Money) of the Business Occupations and Professions Article.

### 2. Latania Hubbard:[16]

With respect to Ms. Hubbard, the hearing judge found that Blum deposited checks from her totaling $5000 into his personal and operating bank accounts, not into an attorney trust account, and that Blum had not earned those funds. Blum's testimony that he had performed between $11,000 and $12,000 worth of work for Ms. Hubbard at the time he received the funds, was found "not ... to be credible, along with most of what Mr. Blum testifies to."

In addition, the hearing judge found that the documentary evidence did not support Blum's claim. A January 12, 1998 letter of engagement between Ms. Hubbard and Blum indicated that an "advance fee" of $5000 was due, that $4000 of that had been received, and that the remaining $1000 was due no

---

16. We note that the hearing judge found that Bar Counsel was denied the benefit of cross-examining Blum's September 5, 2002 testimony regarding his representation of Ms. Hubbard and all of the other clients discussed herein because Blum failed to appear for the hearing on September 6, 2002.

later than January 31, 1998. The checks from Ms. Hubbard to Blum were dated January 18, 1998 and February 8, 1998, and a deposit slip indicated Blum deposited the former check into his operating account several days after receiving it. A statement of account,[17] however, predated the letter of engagement. It purported to cover the period from "January 1, 1998 through April 20, 1999." Nevertheless, itemizations listed in that statement, according to the hearing judge, did not support Blum's testimony regarding the amount of work he had done for Ms. Hubbard prior to the January 12 letter of engagement. Thus, according to the hearing judge, the $5000 represented, as was characterized in the letter of engagement, an "advance fee." Blum had not yet earned all of the money when he deposited it into his operating and personal accounts.

Based on these findings of fact, the hearing judge concluded that Blum violated MRPC 1.15(a)(Safekeeping Property), Maryland Rule 16–609(Prohibited Transactions), and Maryland Code, Sections 10–304 (Deposit of Trust Money) and 10–306 (Misuse of Trust Money) of the Business Occupations and Professions Article.

### 3. Corlus Leslie Sellers

The hearing judge found that Blum was retained by Ms. Sellers on June 24, 1998, by virtue of a letter of engagement and a $2500 check representing the retainer fee called for in the letter, both dated June 24, 1998. On June 27, 1998, Blum deposited the $2500 check into his personal account at First National Bank of Maryland, but at that time, the hearing judge found, Blum had not earned all of the money although Blum had produced a statement of account running from June 21, 1998 to September 20, 1998, "to show that . . . the work had started prior to the letter of engagement." The statement of account, however, had "no specific dates or times in

---

**17.** The date on the statement of account for Ms. Hubbard, and on the statements of account for the other clients discussed herein, is January 8, 2001. Blum indicated that this was so because a computer program he was using automatically printed the date as the day on which he had printed the statements.

terms of hours" and did not support Blum's testimony regarding work he had done for Ms. Sellers prior to his depositing the check.

Based on these findings of fact, the hearing judge concluded that Blum violated MRPC 1.15(a)(Safekeeping Property), Maryland Rule 16–609(Prohibited Transactions), and Maryland Code, Sections 10–304 (Deposit of Trust Money) and 10–306 (Misuse of Trust Money) of the Business Occupations and Professions Article.

### 4. Lindsey B. Asay

According to Judge Dugan's findings of fact, Blum accepted a check for $1500 on April 17, 1998 from Lindsey B Asay, and on April 22, 1998, he deposited that check into his personal checking account at First National Bank of Maryland. That check, as found by the hearing judge, had not yet been completely earned by Blum when he made the deposit into his personal account. A statement of account indicated a beginning date of March 21, 1998 and stated in part, "Review domestic violence pleadings for initial client appointment 4/17," the same date that Blum received Mr. Asay's check. There was nothing in the statement of account or other documentary evidence, according to the hearing judge, to support Blum's testimony with respect to work he had done prior to depositing Mr. Asay's check. The funds represented by that check, therefore, were unearned when deposited into Blum's personal account on April 22, 1998.

Based on these findings of fact, the hearing judge concluded that Blum violated MRPC 1.15(a) (Safekeeping Property), Maryland Rule 16–609 (Prohibited Transactions), and Maryland Code, Sections 10–304 (Deposit of Trust Money) and 10–306 (Misuse of Trust Money) of the Business Occupations and Professions Article.

### 5. Vasilious Pappas

The hearing judge found that on June 22, 1999, Blum deposited a $5000 check dated June 21, 1999 from Vasilious

Pappas into his personal account, but that Blum had not earned that check in full by the time he deposited it. Blum produced a statement of account with a beginning date of June 21, 1999, indicating that he had appeared at a protective order hearing, prepared a complaint for limited divorce, and attended a conference regarding strategy for custody and divorce. Blum testified, however, that he had done additional work constituting $5000 worth of services. The hearing judge found that Blum's testimony lacked credence and was not supported by the statement of account, with the result that Blum had not fully earned the $5000 check when he deposited it into his personal checking account.

Based on these findings of fact, the hearing judge concluded that Blum violated MRPC 1.15(a)(Safekeeping Property), Maryland Rule 16–609(Prohibited Transactions), and Maryland Code, Sections 10–304 (Deposit of Trust Money) and 10–306 (Misuse of Trust Money) of the Business Occupations and Professions Article.

### 6. Christine Bernstein

According to Judge Dugan's findings of fact, a February 24, 1998 letter of engagement executed by Ms. Bernstein and Blum indicated that Ms. Bernstein was advancing a fee of $1000 to Blum. Blum's statement of account running from February 21, 1998 through May 20, 1999, according to the hearing judge, did not indicate how much work was done prior to the February 24, 1998 letter of engagement and did not support Blum's testimony regarding the amount of the work which he purportedly had completed prior to receiving Ms. Bernstein's payment. The hearing judge found that Blum did not deposit the $1000 into his escrow account and that the funds were not earned when Blum received them.

Based on these findings of fact, the hearing judge concluded that Blum violated MRPC 1.15(a)(Safekeeping Property), Maryland Rule 16–609(Prohibited Transactions), and Maryland Code, Sections 10–304 (Deposit of Trust Money) and 10–306

(Misuse of Trust Money) of the Business Occupations and Professions Article.

### 7. Cathy Walter

Judge Dugan found that on or about July 9, 1998, Blum entered into a letter of engagement with Ms. Walter, and that on or about that same date, Blum accepted a $5000 payment from Ms. Walter that, as indicated in the letter of engagement, was a retainer fee. Those funds were not deposited into an escrow account, although it was unclear exactly where Ms. Walter's funds went. Blum did not earn, however, the $5000 before receiving it, according to the hearing judge. The hearing judge found Blum's testimony to the contrary to be incredible.

Based on these findings of fact, the hearing judge concluded that Blum violated MRPC 1.15(a) (Safekeeping Property), Maryland Rule 16–609 (Prohibited Transactions), and Maryland Code, Sections 10–304 (Deposit of Trust Money) and 10–306 (Misuse of Trust Money) of the Business Occupations and Professions Article.

### 8. Attorney Trust Account

The hearing judge found that Blum "wrote checks made payable to cash on his attorney trust account at Provident Bank," and that he had named his attorney trust account "Bruce David Blum Law Firm 'IOLTA.'" Based on those findings, the hearing judge concluded that Blum violated Maryland Rules 16–606 (Name and Designation of Account) and 16–609 (Prohibited Transactions).

Bar Counsel presents no exceptions to Judge Dugan's findings and conclusions and, as a sanction for Blum's conduct, recommends disbarment. Blum argued before this Court that his admissions at the evidentiary hearing, which formed much of the bases for Judge Dugan's findings of fact, should be stricken because he was without counsel. Blum also excepts to the manner in which the disciplinary hearings were scheduled and to the hearing judge's denial of his motion for

sanctions and motion for recusal. Based upon those exceptions, Blum urges us to remand the case for *de novo* proceedings. Because Blum's exceptions are without merit, and because his conduct clearly demonstrates that he is unfit to practice law in this State, we shall disbar him.

## I. Standard of Review

This Court exercises "original and complete jurisdiction for attorney disciplinary proceedings in Maryland," and conducts "an independent review of the record." *Attorney Grievance Comm'n v. McLaughlin,* 372 Md. 467, 492, 813 A.2d 1145, 1160 (2002)(citing *Attorney Grievance Comm'n v. Garfield,* 369 Md. 85, 97, 797 A.2d 757, 763 (2002) (citing *Attorney Grievance Comm'n v. Garland,* 345 Md. 383, 392, 692 A.2d 465, 469 (1997))). In conducting that review, we accept the hearing judge's findings of fact as *prima facie* correct unless shown to be "clearly erroneous," and we give due regard to the hearing judge's opportunity to assess the credibility of witnesses. *Attorney Grievance Comm'n v. Wallace,* 368 Md. 277, 793 A.2d 535 (2002). "As to the hearing judge's conclusions of law," however, "our consideration is essentially de novo." *Attorney Grievance Comm'n v. Dunietz,* 368 Md. 419, 428, 795 A.2d 706, 710–711 (2002) (quoting *Attorney Grievance Comm'n v. Thompson,* 367 Md. 315, 322, 786 A.2d 763, 768 (2001) (quoting *Attorney Grievance Comm'n v. Briscoe,* 357 Md. 554, 562, 745 A.2d 1037, 1041 (2000))).

## II. Discussion

### A. Blum's Exceptions

Blum claims that because the evidentiary hearings were "unfair[ly] schedul[ed]" in the Circuit Court, he was prevented from "fully presenting his case" and from retaining counsel. Consequently, he claims that his admissions should be stricken and that he is entitled to an entirely new hearing. In support of that claim, Blum presents no arguments other than those contained in his Supplemental Motion to Continue Disciplinary Hearing, which was previously filed in and denied

by this Court. Blum also claims that he did not receive a full and fair trial because the Circuit Court, after realizing that the proceedings would take longer than expected, continued them through September 6, 2002, despite Blum's claim that he could not appear on that date.

We have considered previously the arguments contained in Blum's Supplemental Motion to Continue Disciplinary Hearing and found them to be without merit. The disciplinary hearings in this case, pursuant to our March 27, 2002 Order remanding the matter to the hearing judge for findings of fact and conclusions of law, was to occur "not later than thirty (30) days from the filing of the response." Nonetheless, we already had continued the hearing twice before Blum's third motion for a continuance. In the first motion, which was filed by Bar Counsel, Blum agreed with Bar Counsel that, because of discovery difficulties, the hearing should occur on July 8, 2002. We granted that motion on May 22, 2002. Two days later, however, despite agreeing to the date of July 8, 2002, Blum filed a motion seeking to continue the proceedings further in order "to obtain counsel and to adequately prepare." In a July 8, 2002 Order, we granted Blum's motion, setting the hearing date for September 4 and 5, 2002. Thus, we afforded Blum almost two more months to retain counsel and prepare for the hearings, even after he had already agreed that July 8, 2002 was an appropriate date. Moreover, Blum concedes that by July 8, 2002, he was aware of our Order. Thus, despite any prior communications he claims that he had with the Circuit Court or Judge Dugan's chambers with respect to the hearing dates, he knew, as of July 8, 2002, when the hearings were to occur.

Blum's claim with respect to the continuance of the hearing on September 6, 2002, is also wholly meritless. Blum represented to the hearing judge that he was unavailable on September 6, 2002 for two reasons: first, because his family celebrates Rosh Hashanah early, and second, because he had a brief due in the Court of Special Appeals on September 6, 2002. With respect to the brief, the Court of Special Appeals was contacted to determine if the due date could be extended,

and Judge Dugan discovered that Blum's case in fact had been dismissed by the Court of Special Appeals in an August 28, 2002 order because a brief due on August 14, 2002 had not been timely filed. When confronted with this, Blum's response was that the Court of Special Appeals had miscalculated the due date and that he had not received notice of the dismissal. Judge Dugan, however, found that Blum was being "less than candid with the Court." We have no difficulty in accepting Judge Dugan's finding, especially in light of Blum's continued lack of candor, which occurred when he appeared before this Court. In oral argument, Blum was asked whether he had told Judge Dugan that he could not appear on September 6 because he had a brief due in the Court of Special Appeals. Blum claimed that he had not said that, but had stated that he "would be filing a brief." Before Judge Dugan on September 5, 2002, however, Blum asserted on at least two separate occasions, "I have a brief due by tomorrow."

Nor was he unavailable for the September 6, 2000 hearing because of Rosh Hashanah, for, as Judge Dugan pointed out, that holy day did not begin until sundown on September 6, 2002. Thus, Blum was not prevented from attending the September 6, 2002 hearing. On the contrary, he chose not to attend.

Blum's final two exceptions are based on Judge Dugan's denial of his motion for sanctions and his motion for recusal. They carry no more weight than the exceptions already discussed. On May 23, 2002, Blum served petitioner with a notice to take the deposition of Petitioner. In response, Bar Counsel filed a motion for protective order alleging that Blum's notice was oppressive, overly broad, and inappropriate because it would not lead to discoverable facts. During a hearing on Bar Counsel's motion, after negotiating other issues, Bar Counsel offered to make available for the deposition Mr. Reburn, the primary investigator in the matter, or Mr. Hirshman, Bar Counsel. Blum would not identify whom he would prefer for the deposition, and the Circuit Court advised petitioner that it need only produce Mr. Reburn.

When Bar Counsel produced Mr. Reburn for the deposition, Blum inquired as to whether Mr. Reburn was produced pursuant to the notice of deposition and was there to testify on behalf of petitioner. Blum also claimed that Bar Counsel's response was that "Mr. Reburn, who was the investigator, was present to testify." Dissatisfied with Bar Counsel's answer, Blum filed a motion for sanctions, alleging that the disciplinary action against him should be dismissed for willful discovery violations.

The Circuit Court denied Blum's motion, and was correct in doing so. We have said in the context of interpreting the discovery rules [18] that

> [t]he dismissal of a claim ... is among the gravest of sanctions, and as such, is warranted only in cases of egregious misconduct such as 'willful or contemptuous' behavior, 'a deliberate attempt to hinder or prevent effective presentation of defenses or counterclaims,' or 'stalling in revealing one's own weak claim or defense.'

*Manzano v. Southern Maryland Hosp.*, 347 Md. 17, 29, 698 A.2d 531, 537 (1997)(quoting *Rubin v. Gray*, 35 Md.App. 399, 400–01, 370 A.2d 600, 601 (1977)) (citations omitted). There is absolutely no indication that Bar Counsel committed any discovery violations, willful or otherwise. Indeed, the Circuit Court found during the June 18, 2002 hearing "that Ms. Kessler [Assistant Bar Counsel who prosecuted this case] is not acting in bad faith [but] is doing everything she can to provide you with what you want."

Blum's final exception is based on his motion to recuse Judge Dugan. In that motion, Blum asserted that Judge Dugan, by his ruling on the discovery issue, "showed a predisposition and bias in favor of petitioner." Blum's argument has

---

18. "Chapter 400 of Title 2" of the Maryland Rules, "governs the taking of depositions and discovery in the hearing of [disciplinary] charges." Md. Rule 16–710(a). *See also Attorney Grievance Comm'n v. Powell*, 369 Md. 462, 471 n. 5, 800 A.2d 782, 787 n. 5 (2002)(After a petition for disciplinary action has been filed, "discovery is governed by Title 2, Chapter 400.")(citing Md. Rule 16–756, the successor to Md. Rule 16–710).

no merit. In ruling on the motion for recusal, Judge Dugan declared that he had "no reason or basis" to recuse himself. Contrary to what Blum asserts, the record in this case reflects behavior of the Circuit Court Judge that was both patient and fair. Respondent bears the "heavy burden to overcome the presumption of impartiality and must prove that the judge has a personal bias and prejudice against him or her or has personal knowledge of disputed evidentiary facts concerning the proceeding." *Attorney Grievance Comm'n v. Shaw*, 363 Md. 1, 11, 766 A.2d 1028, 1033 (2001). Blum has not demonstrated that Judge Dugan was biased or prejudiced against him, only that Judge Dugan did not rule in his favor.

None of Blum's exceptions have merit and all, therefore, are overruled.

### B. Blum's Mishandling of Client Funds and Pattern of Deceit

### 1. MRPC 1.15 and 1.16, Maryland Rules 16–606 and 16–609, and Maryland Code, Sections 10–304 and 10–306 of the Business Occupations and Professions Article.

The hearing judge concluded that Blum's mishandling of funds with respect to Ms. Dianat, Ms. Hubbard, Ms. Bernstein, Ms. Sellers, Ms. Walter, Mr. Asay, and Mr. Pappas violated MRPC 1.15(a), Maryland Rule 16–609, and Maryland Code, Sections 10–304 and 10–306 of the Business Occupations and Professions Article.

With respect to Ms. Dianat, Ms. Hubbard, Ms. Bernstein, Ms. Sellers, Ms. Walter, Mr. Asay, and Mr. Pappas, Blum deposited funds from them into his personal or operating accounts, rather than into an attorney trust account. The hearing judge found that Blum had not yet earned these funds at the time he deposited them into his personal and operating accounts and that Blum did not use the funds for their intended and authorized purposes. Indeed, judging from the quantity of violations, it appears as though it was Blum's practice to take a client's money entrusted to him for future services and to then use that money as if it were his own, prior

to earning it. It also appeared to be his practice to maintain ambiguous and disorganized financial records. Blum's statements of accounts relating to the clients at issue, for instance, contained itemizations of activities, but consistently failed to provide dates or times spent on the itemizations, thus, perhaps not entirely without purpose, often rendering the time, nature and extent of his services unclear. The lack of clear documentation in this case adds further discredit to Blum's already incredible assertions that he would perform substantial amounts of services for clients without charging them, and then later bill those clients for less than what he purportedly was owed.

A hearing judge's factual findings are *prima facie* correct unless shown to be clearly erroneous. *McLaughlin,* 372 Md. at 493, 813 A.2d at 1160. Judge Dugan's findings, that the funds at issue were not earned when Blum deposited them into his personal and operating accounts, were not clearly erroneous. The funds were given to Blum in anticipation of future services, and as such, "qualified as 'trust money' under Section 10–301 of the Business Occupations and Professions Article." *Id.* at 504, 813 A.2d at 1167. Section 10–301(d) defines "trust money" as "a deposit, payment or other money that a person entrusts to a lawyer to hold for the benefit of a client or a beneficial owner." According to Section 10–304 of the Business Professions and Occupations Article, an attorney, except in certain circumstances not relevant here, "expeditiously shall deposit trust money into an attorney trust account." Along the same lines, Section 10–306 of the Business Occupations and Professions Article provides that "[a] lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

Provisions of the MRPC and the Maryland Rules mirror these concepts. MRPC 1.15(a) provides in part that when a client entrusts a lawyer with the client's funds, the "[f]unds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules" and that the lawyer must keep "complete records of such account funds."

Maryland Rule 16–609 provides, in part, that an attorney may not use any funds "required by these Rules to be deposited in an attorney trust account . . . for any unauthorized purpose."

Ms. Dianat, Ms. Hubbard, Ms. Bernstein, Ms. Sellers, Ms. Walter, Mr. Asay, and Mr. Pappas gave the funds at issue to Blum for the purpose of retaining his future services, not to pay for services that already had been rendered. Blum, however, deposited the funds into his personal and operating accounts as if he had already earned them. Consequently, he used those funds for a "purpose other than the purpose for which" they were entrusted to him. Thus, we agree with the hearing judge's conclusions that with respect to the above listed clients, Blum violated MRPC 1.15(a), Maryland Rule 16–609, and Maryland Code, Sections 10–304 and 10–306 of the Business Occupations and Professions Article.

We also agree with the hearing judge's conclusion that with respect to Ms. Dianat, Blum violated MRPC 1.16(d). The hearing judge found that Ms. Dianat mailed and faxed a letter to Blum in which she terminated his representation and requested a refund of unused retainer funds. Blum did not respond to Ms. Dianat's request for a refund, which prompted her to file a complaint with Bar Counsel. Upon receiving notice of that complaint, Blum acknowledged that he owed Ms. Dianat $720 and that he would pay her those funds. Blum, however, did not refund the money, and then misrepresented to Ms. Dianat's counsel, Bar Counsel, and the Court, that he had. Thus, upon Ms. Dianat's termination of Blum's representation, Blum did not "take steps to the extent reasonably practicable to protect a client's interests, such as . . . refunding any advance payment of fee that has not been earned." MRPC 1.16(d); *see also Attorney Grievance Comm'n. v. Milliken,* 348 Md. 486, 517, 704 A.2d 1225, 1240 (1998) (stating that under Md. Rule 1.16(d), an attorney is "obligated to return any unearned portion" of an "advance fee payment") On the contrary, the only person's interests Blum was concerned with protecting were his own, and in doing so, he was willing to lie and deceive time and again.

■ Finally, the hearing judge was correct when he concluded that Blum violated Maryland Rules 16–606 and 16–609 when he named his attorney trust account "Bruce David Blum Law Firm 'IOLTA.'", and wrote checks made payable to cash on his attorney trust account. Maryland Rule 16–606 states:

> An attorney or law firm shall maintain each attorney trust account with a title that includes the name of the attorney or law firm and that clearly designates the account as 'Attorney Trust Account', 'Attorney Escrow Account', or 'Clients' Funds Account' on all checks and deposit slips. The title shall distinguish the account from any other fiduciary account that the attorney or law firm may maintain and from any personal or business account of the attorney or law firm.

Blum failed to title his attorney trust account in compliance with this rule. *See Attorney Grievance Comm'n v. Bernstein,* 363 Md. 208, 221–22, 768 A.2d 607, 614 (2001)(concluding that an attorney trust account entitled "Maryland Legal Services, Jack A. Bernstein, Esquire, IOLTA" violated "the Maryland Rules regarding Attorney Trust Accounts"). In addition, Blum wrote checks to cash from his attorney trust account in violation of Maryland Rule 16–609, which provides in part that "[a]n instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer."

### 2. MRPC 3.3, 3.4, 8.1 and 8.4

The hearing judge concluded that Blum's myriad misrepresentations to Ms. Dianat's counsel, Bar Counsel, the inquiry panel, and the court, regarding Blum's admitted forgery of Check 317, violated MRPC 3.3(a)(1) and (a)(4), 3.4(a) and (b), 8.1(a) and (b) and 8.4(c) and (d). We agree.

■ Blum misrepresented to Ms. Dianat's new attorney that he had refunded Ms. Dianat's money to her. He then altered Check 317 and manufactured a photocopy purporting to be the back of that check in order to create the illusion that he had paid Ms. Dianat with a check that had been negotiated. By this conduct, the hearing judge found that Blum violated MRPC 3.4(a) and (b) and MRPC 8.4(c) and (d). We agree.

Blum had received Ms. Dianat's complaint to Bar Counsel and knew that her attorney was attempting to collect her money when he altered the check and concocted the deceptive photocopy. Consequently, Blum "unlawfully obstruct[ed] another party's access to evidence, . . . unlawfully alter[ed] . . . a document . . . having potential evidentiary value, [and] falsif[ied] evidence." MRPC 3.4(a) and (b). His alteration of the check and his misrepresentations to Ms. Dianat's attorney were also fraught with "dishonesty, fraud, [and] deceit," MRPC 8.4(c), and were "prejudicial to the administration of justice." MRPC 8.4(d). *See also Attorney Grievance Comm'n v. Koven*, 361 Md. 337, 342–343, 761 A.2d 881, 883–884 (2000)(concluding that an attorney "violated Rule 8.4(c) and (d)" when he "intentionally altered Department of Labor letters and alien certification receipts, [ ] created letters and faxes to mislead [a company] and its employees, and [ ] submitted a false billing statement"); *Attorney Grievance Comm'n v. White*, 354 Md. 346, 350–54, 731 A.2d 447, 450–52 (1999)(concluding that destroying evidence and giving false testimony in federal district court violate MRPC 3.4(a)).

Blum's disingenuous and obstructive conduct continued as Bar Counsel attempted to investigate Ms. Dianat's complaint. In response to Bar Counsel's inquiry, Blum falsely claimed that the bank account upon which Check 317 was drawn did not provide negotiated checks when Check 317 was negotiated and that he would contact the bank for the check. In addition, Blum lied to Bar Counsel investigator John Reburn about the movement of Ms. Dianat's money between his accounts and failed to respond to repeated requests for financial records related to Ms. Dianat's complaint. This conduct, the hearing judge correctly determined, violated MRPC 8.1(a)("[A] lawyer in connection with . . . a disciplinary matter, shall not . . . knowingly make a false statement of material fact.") and MRPC 8.4(c) ("It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation."); *see also Attorney Grievance Comm'n v. Angst*, 369 Md. 404, 410, 800 A.2d 747, 751 (2002)(concluding that misrepresentations to Bar Counsel and

Bar Counsel investigator constituted violations of MRPC 8.1(a) and 8.4(c))

Blum's motion to quash a Bar Counsel subpoena and his conduct at the hearing on that motion also violated several Maryland Rules of Professional Conduct. Judge Dugan concluded, and we agree, that during the hearing before the Honorable Martha G. Kavanaugh of the Circuit Court for Montgomery County, Blum violated MRPC 3.3(a)(1) and (a)(4), and MRPC 8.4(c) and (d), when he knowingly made repeated and blatant "false statements of material fact" to Judge Kavanaugh and offered evidence he knew to be false. Blum repeated, this time under oath, his previous lies with respect Check 317 and the account upon which it was drawn. In addition, he falsely claimed, among other things, that the bank told him it could not find the original Check 317, that Mr. Willis (Ms. Dianat's counsel), had requested that check, and that according to its records, it provided the check to Mr. Willis. *See White,* 354 Md. at 363–64, 731 A.2d at 457 (1999)(concluding that attorney's false testimony under oath during a deposition violated MRPC 3.3(a)(1) and (a)(4) and 8.4(c) and (d)). When Blum made similar misrepresentations to the inquiry panel, the hearing judge correctly concluded that the same rules were violated, in addition to MRPC 8.1(a)("[A] lawyer in connection with ... a disciplinary matter, shall not ... knowingly make a false statement of material fact.") and MRPC 3.4(a) and (b)(prohibiting a lawyer from "unlawfully obstruct[ing] another party's access to evidence[,] ... unlawfully alter[ing] ... a document ... having potential evidentiary value[,] [and] falsifying evidence"). Finally, the hearing judge correctly concluded that as Bar Counsel continued to request information from Blum, and as he continued to fail to provide that information, he violated MRPC 8.1(b)("[A] lawyer in connection with ... a disciplinary matter, shall not ... knowingly fail to respond to a lawful demand for information from [a] ... disciplinary authority....") *See also Attorney Grievance Comm'n v. Powell,* 369 Md. 462, 473 n. 8, 800 A.2d 782, 789 (2002) ("An attorney is required to cooperate with Bar Counsel during the investigative process. Once a

petition for disciplinary action is filed, an attorney is obligated to provide requested discovery in accordance with the Maryland Rules of Procedure.").

### C. Sanction

 Bar Council recommends that the appropriate sanction in this case is disbarment. We agree. Recently, in *McLaughlin*, we recognized that,

> the purpose of the sanctions is to protect the public, to deter other lawyers from engaging in violations of the Maryland Rules of Professional Conduct, and to maintain the integrity of the legal profession. *See Attorney Grievance Comm'n of Maryland v. Hess*, 352 Md. 438, 453, 722 A.2d 905, 913 (1999) (quoting *Attorney Grievance Comm'n of Maryland v. Webster*, 348 Md. 662, 678, 705 A.2d 1135, 1143 (1998)). We have stated that "[t]he public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed." *Attorney Grievance Comm'n of Maryland v. Awuah*, 346 Md. 420, 435, 697 A.2d 446, 454 (1997). Therefore, the appropriate sanction depends upon the facts and circumstances of each particular case, including consideration of any mitigating factors. *See Attorney Grievance Comm'n of Maryland v. Atkinson*, 357 Md. 646, 656, 745 A.2d 1086, 1092 (2000); *Attorney Grievance Comm'n of Maryland v. Gavin*, 350 Md. 176, 197–98, 711 A.2d 193, 204 (1998).

372 Md. at 510, 813 A.2d at 1170.

Blum refused to return Ms. Dianat's money to her when she terminated his representation, and then altered a check, which he provided to her new attorney, in order to create the illusion that he had paid her. Blum also took funds that clients had given to him in anticipation of future services and deposited such funds into his personal and operating accounts for his own benefit, before he had earned those funds. Behavior such as this, in and of itself, "in the absence of mitigating circumstances, ordinarily warrants disbarment." *Milliken*, 348 Md.

at 520, 704 A.2d at 1241–42 (concluding that "numerous trust account violations" and "conversion of client monies in failing to return unearned fees," among other things, mandated disbarment); *Powell*, 369 Md. at 475, 800 A.2d at 789–90 (recognizing that "[i]t has long been the position of this Court that disbarment is the appropriate sanction for intentional dishonest conduct" and stating that in cases involving "intentional dishonesty, fraud, misappropriation and the like, we will not accept as compelling extenuating circumstances 'anything less than the most serious and utterly debilitating mental or physical health conditions ...' ") (quoting *Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 413–14, 773 A.2d 463, 485 (2001)); *Bernstein*, 363 Md. at 226, 768 A.2d at 617 (recognizing that "[w]e have held consistently that '[m]isappropriation of funds by an attorney is an act infested with deceit and dishonesty and ordinarily will result in disbarment in the absence of compelling extenuating circumstances justifying a lesser sanction' ") (citations omitted).

Blum has presented no mitigating factors, and we find none. In fact, rather than any mitigating factors, the egregiousness of Blum's conduct was compounded and aggravated by his persistent lies, deceit, and obstructionist behavior during the course of the disciplinary process. Judge Dugan found that "Mr. Blum, in the course of these proceedings, would say anything or do anything to try and prevent Bar Counsel from investigating and finding out the violation[s] he [has committed] and the fraud that he has perpetrated upon the Court and his client." Indeed, Blum was willing to make multiple, blatant misrepresentations to Ms. Dianat's counsel, Bar Counsel, and the inquiry panel in an attempt to obfuscate the truth and save his own skin. In addition, he ignored several, legitimate requests by Bar Counsel for financial documents pertinent to the disciplinary hearing, he altered and destroyed evidence, and on numerous occasions, he lied under oath to Judge Kavanagh. Such conduct is intolerable.

Honesty is of paramount importance in the practice of law.

Unlike matters relating to competency, diligence, and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character.

*Angst,* 369 Md. at 420, 800 A.2d at 757 (quoting *Attorney Grievance Comm'n v. Lane,* 367 Md. 633, 646, 790 A.2d 621, 628 (2002)(quotation omitted)). Moreover, "the practice of law carries with it special responsibilities of self-regulation, and attorney cooperation with disciplinary authorities is of the utmost importance to the success of the process and the integrity of the profession." *Powell,* 369 Md. at 474 n. 8, 800 A.2d at 789 n. 8 (quoting *Attorney Grievance Comm'n v. Fezell,* 361 Md. 234, 255, 760 A.2d 1108, 1119 (2000)). Blum has repeatedly betrayed the public trust that he was endowed with when admitted to the Bar of this Court. In order to protect the public, deter other lawyers from engaging in violations of the Maryland Rules of Professional Conduct and to maintain the integrity of the legal profession, he must be disbarred.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(C), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST BRUCE DAVID BLUM.*